Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
*Attorneys for Defendants Twentieth Century*
*Fox Film Corporation, One America*
*Productions, Inc., Todd Lewis Schulman,*
*Monica Levinson, Julie Lynn Chouinard,*
*Everyman Pictures, and Dune Entertainment LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

| | |
|---|---|
| Cindy Streit; Sarah Moseley; Ben K. McKinnon; Michael M. Jared; and Lynn S. Jared, : : : | Case No.: 08 CIV 01571 (LAP) |
| Plaintiffs, : : | |
| v. : : | |
| Twentieth Century Fox Film Corporation; One America Productions, Inc.; Springland Films; Todd Lewis Schulman; Monica Levenson; Julie Lynn Chounard; Sacha Baron Cohen; Everyman Pictures; Gold/Miller; Productions; Major Studio Partners, Inc.; Dune Entertainment, LLC; Four by Two Production Company; Peter Baynham; Jan Mazer; and Anthony Hines, : : : : : : : : : : : | |
| Defendants. : : | |

--------------------------------------------------------------------X

## DECLARATION OF JOAN HANSEN IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

I, **JOAN HANSEN**, declare as follows:

1.     I am an Assistant Secretary of defendant One America Productions, Inc. ("One

America"). One America has registered the tradenames Springland Films ("Springland") and Belarus Television. I submit this declaration on behalf of defendants Twentieth Century Fox Film Corporation ("Fox"), One America, Todd Lewis Schulman ("Schulman"), Monica Levinson (incorrectly sued herein as "Monica Levenson") ("Levinson"), Julie Lynn Chouinard (incorrectly sued herein as "Julie Lynn Chounard") ("Chouinard"), Everyman Pictures ("Everyman") and Dune Entertainment LLC ("Dune") (collectively, "Defendants") in support of their Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    On April 7, 2008, plaintiffs Cindy Streit ("Streit"), Sarah Moseley, Ben K. McKinnon, Michael M. Jared and Lynn S. Jared (collectively "Plaintiffs") filed their First Amended Complaint, which stems from Plaintiffs' alleged inducement to appear in the film *Borat – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (the "Film") and their subsequent appearances in the Film.

3.    As shown on the DVD of the Film, the Film tells the fictional story of Borat Sagdiyev ("Borat"), a Kazakh TV personality, who is dispatched to the United States to report on the American people. Comedian and actor Sacha Baron Cohen created and plays Borat. A true and correct copy of the Film is annexed hereto as Exhibit "A."

4.    In the Film, Plaintiffs are depicted in one scene dining with Borat while Borat attempts to use the lessons he learned earlier that day from Kathie Martin, an American etiquette coach (the "Scene"). A true and correct copy of the Scene is annexed hereto as Exhibit "B."

5.    On October 24, 2005, before appearing in the Film, Streit entered into a contract with Springland, whereby, in exchange for a maximum amount of $1,800.00, Streit and her

company, Etiquette Training Services, agreed "to conduct an etiquette and dining training session *plus* plan and implement a three-course formal dining dinner," which would be filmed by Springland (the "ETS Contract"). A true and correct copy of the ETS Contract is annexed hereto as Exhibit "C."

6.      On October 24, 2005, each of the Plaintiffs (including Streit) individually entered into a six-paragraph standard consent agreement with Springland, whereby, each Plaintiff agreed to appear in the Film and to release various claims in connection with their appearance in the Film in exchange for one hundred dollars each (the "Consent Agreements"). True and correct copies of Plaintiffs' Consent Agreements are annexed hereto as Exhibit "D."

7.      Subsequent to being filmed for her appearance in the Film, Streit complained to Springland, Levinson and Chouinard that she did not agree to the $1,800.00 maximum charge in the ETS Contract and she expected Springland to pay her additional monies for her etiquette training services and preparation and implementation of the formal dinner. To resolve this dispute, almost a month after the filming, on November 16, 2005, Streit, Etiquette Training Services and Springland entered into a release of liability, whereby, in exchange for $4,450.00 Streit agreed to release Springland and its related entities from any and all claims (the "Release of Liability"). A true and correct copy of the Release of Liability is annexed hereto as Exhibit "E."

8.      Defendant Fox distributed the Film, which was first released in theaters in the United States on or about November 3, 2006, and was released on DVD in the United States on March 6, 2007.

9.      Defendant One America produced the Film.

10.    Defendant Everyman is the "loan-out" corporation for defendant Jay Roach, who is one of the producers of the Film.

11.    Defendant Levinson is an executive producer of the Film.

12.    Defendants Schulman and Chouinard were employed by One America as a field supervisor and a film coordinator, respectively, for the Film.

13.    Defendant Dune was a passive investor in the Film.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this Declaration was executed in Los Angeles, California on May 9, 2008.

_____
**JOAN HANSEN**

<u>**EXHIBIT A**</u>

**To the Declaration of Joan Hansen
in Support of Defendants' Motion To Dismiss the First Amended Complaint**

**(A true and correct copy of the Film on DVD
submitted in hard copy in Chambers)**

**[Not Filed Electronically]**

## EXHIBIT B

**To the Declaration of Joan Hansen
in Support of Defendants' Motion To Dismiss the First Amended Complaint**

**(A true and correct copy of the Film Scene on DVD
submitted in hard copy in Chambers)**

**[Not Filed Electronically]**

**<u>EXHIBIT C</u>**

**To the Declaration of Joan Hansen
in Support of Defendants' Motion To Dismiss the First Amended Complaint**

October 24, 2005

Facsimile # 323 850-3112
Email: Julie@SpringlandFilms.com

To:   Julie Lynn Chounard
      Monica Levenson
      Springland Films
      8023 Beverly Boulevard Suite 5-505
      Los Angles, California 90048

      From:  Cindy Streit    Fax: (205) 836-3221)    Email: Charmnlady@hotmail.com
      Etiquette Training Services (ETS)
      1236 Stonecrest Drive
      Birmingham, AL 35235

**Regarding:** Letter of commitment for ETS to conduct an etiquette and dining training session *plus* plan and implement a three-course formal dining dinner for Springland Films Production Company. The purpose of this writing is to provide a letter of agreement (**contract**) setting forth the services, and the rates for those services, that Etiquette Training Services Inc., (ETS) will provide.

*Belarus Television* ~~of~~ *mu*

ETS will customize its "Business Etiquette and Leadership Programe" and Dining Tutorial Program and present a two-hour training session for an international guest from ~~the Republic of Belarus~~ for Springland Films. Additionally, ETS will plan, design, facilitate, coordinate and implement an in-home style atmosphere dining experience for the dignitary.

This will be two separate consulting and training sessions. The training sessions will be held at a place to be determined by ETS. Planning, coordinating, facilitating and set up will conducted on Sunday and Monday October 23 and 24. These sessions will be held on October 24, 2005 from 4:00pm until approximately 9:00pm. ~~These sessions will be filmed as part of a documentary for Belarus Television and for those purposes only.~~  *ok mu*

**Session 1:** Will consist of training this individual in social skills and dinning etiquette as part of the documentary. The social skills training will be approximately two-hours in length. (Starting at approximately 4:00pm until 6:00pm (CST). The purpose of this film session is to train the international guest in dining skills and social interactive skills.

**Session 2:** For the second session, ETS will plan, organize, coordinate and facilitate a dinner party conducted in honor of this dignitary. This will be at a place to be determined by ETS. The purpose of this film session is to enable the dignitary to interact in a home-like setting of southern hospitality and comfort to learn about southern traditional values and southern-style living as part of the entire cultural experience in his travels throughout America.

**Cost:** For session one, ETS will charge a basic minimum fee of $350 for the two-hour dining tutorial and social graces skills training. Additionally, catering service, food, wait staff service and gratuities, facilitation of set up, room fees and any other additional service charges will be at the expense of Springland Films Company. For session two, the consultant fee will be charged at a rate of $150 per hour for planning, facilitating, coordinating and implementing all of the functions stated in session two, *not to exceed a maximum charge of $1800— for said consulting fees.*  *ok mu*

All expenses will be paid in advance to the catering service and in advance for all other expenses and additional services rendered. A down payment of $500 shall be paid to ETS (Etiquette Training Services) in

advance through the catering service and the balance will be charged at the completion of the meal and tutorial. Furthermore, as agreed, an honorarium of $100 per participant for <u>on-camera</u> appearance plus an additional $600 for the host in-home facility will be an additional expense paid by Springland Films.

Springland Films has authorized ETS to charge all fees, expenses and cost involved in this undertaking to a Visa Card in the name of Monica Levenson, a producer with the company. (Visa # 4778133660011462 Expiration date 11/06.) This Visa card will be used as *method of payment* (US currency) for all expenses, services and consultant fees. The signed return of this facsimile will authorize ETS to use this card to pay for these aforementioned services, expenses and fees. Please fill in **credit card mailing address** and **code digit on the back of the card.** Signed                                    **Monica Levenson**

Please initial your confirmation and agreement of the contract and scheduled time for the sessions and return by facsimile at (205) 856-3221.

Monica Levenson, Springland Films                    ml                date 10|24|05
Julie Lynn Hounard, Representative Springland Films    jlh               date 10-24-05
Cindy Streit, ETS                                      cs                date 10/24/05

------------------------------------------------------------------------------

**Menu of topics covered in the one-on-one training session is:**
Introductions and Greetings
Business Manners and Social Skills
Dining Etiquette
Proper Dress and Grooming
Conversation Skills

Julie, if you wish to add to this "menu of skills" that you want covered please add any subject or topic as you deem necessary. Also, I will need this returned **A.S.A.P.** because I cannot make definite catering reservations until this is signed, authorized and returned. Please make sure the authorization code, appropriate signature and credit card mailing address is included above because the caterer cannot process and prepare this event without those items. We are on an extreme timeline now.
Thanks,
Cindy Streit

**EXHIBIT D**

**To the Declaration of Joan Hansen**
**in Support of Defendants' Motion To Dismiss the First Amended Complaint**

## STANDARD CONSENT AGREEMENT

This is an agreement between Springland Films (the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer's obligation to pay a participation fee in the amount of $ 100 (receipt of which is acknowledged by the Participant) and the opportunity for the Participant to appear in a motion picture, the Participant agrees as follows:

1. The Participant agrees to be filmed and audiotaped by the Producer for a documentary-style film, with the working title of "The New Americans" (the "Film"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

2. The Participant agrees that any rights that the Participant may have in the Film or the Participant's contribution to the Film are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the Participant without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for those purposes. The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film and in connection with any ancillary products associated with the Film.

3. The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Film and the Participant's participation in it, and that the consent agreement, for this and other reasons, shall be irrevocable.

4. The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including, but not limited to, claims involving assertions of (a) failure to compensate Participant beyond the amount provided above, (b) failure to use the footage of Participant in the Film, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made on the Film), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Film or the Film in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Film or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

5. This is the entire agreement between the Participant and the Producer or anyone else in relation to the Film, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.

6. Although the Participant agrees not to bring any claim in connection with the Film or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York.

AGREED AND ACCEPTED:

_____

[please sign above line and print name below]

Dated: 10/24/05
[date to be filled in by Participant]

Springland Films

By: _____

[please sign above line and print name below]

Name: _____

Address: _1236_ Stone crest Dr._____

Phone Number: _856 3221_____

Social Security Number: _____

## STANDARD CONSENT AGREEMENT

This is an agreement between Springland Films (the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer's obligation to pay a participation fee in the amount of $ _100_ (receipt of which is acknowledged by the Participant) and the opportunity for the Participant to appear in a motion picture, the Participant agrees as follows:

    1.  The Participant agrees to be filmed and audiotaped by the Producer for a documentary-style film, with the working title of "The New Americans" (the "Film"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

    2.  The Participant agrees that any rights that the Participant may have in the Film or the Participant's contribution to the Film are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the Participant without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for those purposes. The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film and in connection with any ancillary products associated with the Film.

    3.  The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Film and the Participant's participation in it, and that the consent agreement, for this and other reasons, shall be irrevocable.

    4.  The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including, but not limited to, claims involving assertions of (a) failure to compensate Participant beyond the amount provided above, (b) failure to use the footage of Participant in the Film, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made on the Film), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Film or the Film in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Film or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

    5.  This is the entire agreement between the Participant and the Producer or anyone else in relation to the Film, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.

    6.  Although the Participant agrees not to bring any claim in connection with the Film or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York.

AGREED AND ACCEPTED _Sarah Mosoley_

_Sarah Mosoley_

[please sign above line and print name below]

Dated: _10-24-05_
[date to be filled in by Participant]

Springland Films

By: _____

[please sign above line and print name below]

Name: Sarah Moseley

Address: 4976 Heather Point, Bham, AL

Phone Number: 205-991-0403

Social Security Number: _____

STANDARD CONSENT AGREEMENT

This is an agreement between Springland Films (the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer's obligation to pay a participation fee in the amount of $ _100_ (receipt of which is acknowledged by the Participant) and the opportunity for the Participant to appear in a motion picture, the Participant agrees as follows:

1. The Participant agrees to be filmed and audiotaped by the Producer for a documentary-style film, with the working title of "The New Americans" (the "Film"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

2. The Participant agrees that any rights that the Participant may have in the Film or the Participant's contribution to the Film are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the Participant without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for those purposes. The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film and in connection with any ancillary products associated with the Film.

3. The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Film and the Participant's participation in it, and that the consent agreement, for this and other reasons, shall be irrevocable.

4. The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including, but not limited to, claims involving assertions of (a) failure to compensate Participant beyond the amount provided above, (b) failure to use the footage of Participant in the Film, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made on the Film), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Film or the Film in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Film or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

5. This is the entire agreement between the Participant and the Producer or anyone else in relation to the Film, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.

6. Although the Participant agrees not to bring any claim in connection with the Film or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York.

AGREED AND ACCEPTED:

_Ben K. McKinnon_
_Ben K. McKinnon_
[please sign above line and print name below]

Dated: _10/24/05_
[date to be filled in by Participant]

Springland Films

By: _John Ho_

[please sign above line and print name below]

Name: _Ben K. McKennair_

Address: _3912 Asbury Park Circle_

Phone Number: _(205) 970-0160_

Social Security Number:_____

STANDARD CONSENT AGREEMENT

This is an agreement between Springland Films (the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer's obligation to pay a participation fee in the amount of $ 100 (receipt of which is acknowledged by the Participant) and the opportunity for the Participant to appear in a motion picture, the Participant agrees as follows:

    1.  The Participant agrees to be filmed and audiotaped by the Producer for a documentary-style film, with the working title of "The New Americans" (the "Film"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

    2.  The Participant agrees that any rights that the Participant may have in the Film or the Participant's contribution to the Film are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the Participant without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for those purposes.  The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film and in connection with any ancillary products associated with the Film.

    3.  The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Film and the Participant's participation in it, and that the consent agreement, for this and other reasons, shall be irrevocable.

    4.  The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including, but not limited to, claims involving assertions of (a) failure to compensate Participant beyond the amount provided above, (b) failure to use the footage of Participant in the Film, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made on the Film), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Film or the Film in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Film or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

    5.  This is the entire agreement between the Participant and the Producer or anyone else in relation to the Film, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.

    6.  Although the Participant agrees not to bring any claim in connection with the Film or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York.

AGREED AND ACCEPTED:

_____

[please sign above line and print name below]

Dated: 10/24/05

[date to be filled in by Participant]

Springland Films

By: _____

[please sign above line and print name below]

Name: _MICHAEL K. JARED_

Address: _245 BREAM COVE ROAD    (COLUMBIANA AL ) 35051_

Phone Number: _(205) 669.2250_

Social Security Number: _____

## STANDARD CONSENT AGREEMENT

This is an agreement between Springland Films (the "Producer") and the undersigned participant (the "Participant"). In exchange for the Producer's obligation to pay a participation fee in the amount of $ _100_ (receipt of which is acknowledged by the Participant) and the opportunity for the Participant to appear in a motion picture, the Participant agrees as follows:

    1.  The Participant agrees to be filmed and audiotaped by the Producer for a documentary-style film, with the working title of "The New Americans" (the "Film"). It is understood that the Producer hopes to reach a young adult audience by using entertaining content and formats.

    2.  The Participant agrees that any rights that the Participant may have in the Film or the Participant's contribution to the Film are hereby assigned to the Producer, and that the Producer shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the Participant without restriction in any media throughout the universe in perpetuity and without liability on the part of the Producer, and the Participant hereby grants any consents required for those purposes. The Participant also agrees to allow the Producer, and any of its assignees or licensees, to use the Participant's contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film and in connection with any ancillary products associated with the Film.

    3.  The Participant understands that the Producer and its assignees or licensees are relying upon this consent agreement in spending time, money and effort on the Film and the Participant's participation in it, and that the consent agreement, for this and other reasons, shall be irrevocable.

    4.  The Participant specifically, but without limitation, waives, and agrees not to bring at any time in the future, any claims against the Producer, or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including, but not limited to, claims involving assertions of (a) failure to compensate Participant beyond the amount provided above, (b) failure to use the footage of Participant in the Film, (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the Participant's name or likeness or image), (d) damages caused by "acts of God" (such as, but not limited to, injuries from natural disasters), (e) damages caused by acts of terrorism or war, (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of the Participant), (h) infliction of emotional distress (whether allegedly intentional or negligent), (i) trespass (to property or person), (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, (l) copyright or trademark infringement, (m) defamation (such as any allegedly false statements made on the Film), (n) violations of Section 43(a) of the Lanham Act (such as allegedly false or misleading statements or suggestions about the Participant in relation to the Film or the Film in relation to the Participant), (o) prima facie tort (such as alleged intentional harm to the Participant), (p) fraud (such as any alleged deception about the Film or this consent agreement), (q) breach of alleged moral rights, or (r) tortious or wrongful interference with any contracts or business of the Participant.

    5.  This is the entire agreement between the Participant and the Producer or anyone else in relation to the Film, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film.

    6.  Although the Participant agrees not to bring any claim in connection with the Film or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York.

AGREED AND ACCEPTED:

_[signature]_                               Springland Films

[please sign above line and print name below]       By: _[signature]_

Dated: _10/24/05_
[date to be filled in by Participant]                     [please sign above line and print name below]

Name: _Lynn S. Jared_

Address: _245   Bream Cove  Rd         Columbiana Al 35051_

Phone Number: _205   669- 2250_

Social Security Number:_____

**<u>EXHIBIT E</u>**

**To the Declaration of Joan Hansen
in Support of Defendants' Motion To Dismiss the First Amended Complaint**

*Faxed pm (CST)
1:16 pm
CS*

TO: Monica

## RELEASE OF LIABILITY

The undersigned, __Etiquette Training Services__ and __Cindy Streit__ (collectively "Vendor"), in consideration of __$2950 (already paid) + $1500__ hereby releases and discharges SPRINGLAND FILMS, and its related entities, shareholders, directors, officers, employees and agents (collectively, "Released Parties") from and against any and all claims, liabilities, contracts, agreements, causes of action, costs, expenses, and obligations of every kind and nature whatsoever against any of the Released Parties in connection with __all services relating to the Dinner Party and Training Session on 10/23/05 and all time leading up to and after that event.__ ("Services").

Additonal note: $2950 was paid to Ms. Streit via Mr. Doug Blank. An additional $1500 will be paid directly by Springland Films. Mr. Blank will be paid all of his fees via credit card (already charged) and these charges are separate from Ms. Streit's fees – per an agreement between Mr. Blank and Springland Films.

This Release of Liability is valid upon receipt and clearing of One America Productions, check # 001680, in the amount of $1,500 with the endorsement by ETS and Cindy Streit.

*of Wh
CS*

SPRINGLAND FILMS                          ETIQUETTE TRAINING SERVICES
                                                        ("Vendor")

By ___MONICA LEVINSON___              By _Cindy Streit (President)_
      Co-Producer                          Title

                                          _Cindy Streit_
                                          Cindy Streit

Dated: __11/16/05__                     1236 Stonecrest Drive
                                          Address

                                          Birmingham, AL 35235



DETACH STATEMENT BEFORE DEPOSITING

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND MICRO PRINTING

ONE AMERICA PRODUCTIONS, INC.                                              001680
6021 BEVERLY BLVD, SUITE 6503,
LOS ANGELES, CA 90048
(323) 951-4290

| VENDOR NO | CHECK DATE | CHECK NUMBER | PAY EXACTLY |
|---|---|---|---|
| 00000000X229 | 11/15/2005 | 001680 | *******1,500.00* |

PAY Exactly
One Thousand Five Hundred and 00 Cents

ETIQUETTE TRAINING SERVICES, INC.
1236 STONECREST DRIVE
BIRMINGHAM, AL USA 35235

*Thanks
Cindy*