Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
*Attorneys for Defendants Twentieth Century*
*Fox Film Corporation, One America*
*Productions, Inc., Todd Lewis Schulman,*
*Monica Levinson, Julie Lynn Chouinard,*
*Everyman Pictures, and Dune Entertainment LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

Cindy Streit; Sarah Moseley; Ben K.                  :
McKinnon; Michael M. Jared; and Lynn                 :
S. Jared,                                            :      Case No.: 08 CIV 01571 (LAP)
                                                     :
      Plaintiffs,                                 :
                                                     :
v.                                                   :
                                                     :
Twentieth Century Fox Film                           :
Corporation; One America Productions,                :
Inc.; Springland Films; Todd Lewis                   :
Schulman; Monica Levenson; Julie Lynn                :
Chounard; Sacha Baron Cohen;                         :
Everyman Pictures; Gold/Miller;                      :
Productions; Major Studio Partners, Inc.;            :
Dune Entertainment, LLC; Four by                     :
Two Production Company; Peter                         :
Baynham; Jan Mazer; and Anthony                      :
Hines,                                               :
                                                     :
      Defendants.                                 :
                                                     :

-------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………ii

Preliminary Statement ............................................................................1

Factual Background ................................................................................2

    A.    The Parties ......................................................................2

    B.    Procedural History ..........................................................2

        1.    The Alabama Action ...............................................2

        2.    The New York Action..............................................3

    C.    The Releases ...................................................................4

    D.    The Film..........................................................................6

ARGUMENT…………………………………………………………………..7

THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT IN ITS
ENTIRETY…………………………………………………………………..7

    A.    Motion To Dismiss Standard ...........................................7

    B.    Plaintiffs' Claim For Fraudulent Inducement Must Fail
        Because They Are Bound By The Clear Language Of The
        Consent Agreements ........................................................7

        1.    Plaintiffs' Fraudulent Inducement Claim Must Fail
            Because The Alleged Misrepresentations Are
            Contradicted By The Face Of The Consent Agreements.......9

        2.    Plaintiffs' Fraudulent Inducement Claim Also Must Fail
            Because Plaintiffs Disclaimed Reliance On Statements
            About The Film....................................................14

    C.    Streit's Claims Are Barred By The Release of Liability .................14

    D.    Plaintiffs' Claim For Unjust Enrichment Must Fail Because It
        Is Barred By the Consent Agreements And Because It Is
        Preempted By Section 51................................................16

    E.    Plaintiffs' Intentional Infliction Claim Must Fail Because It Is
        Barred by the Consent Agreements And It Fails On the Merits.......18

CONCLUSION……………………………………………………………20

\\\NY - 027721/000009 - 1083375 v1

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Federal Cases</u>

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital, LLC*,
    No. 00 Civ. 5773 (GEL), 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ................................... 4

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
    731 F.2d 112 (2d Cir. 1984) ......................................................................................... 8

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) .......................................................................................... 4

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ................................................................................. 7

*Computerized Radiological Servs. v. Syntex Corp.*,
    786 F.2d 72 (2d Cir. 1986) ............................................................................................ 9

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998) ........................................................................... 14

*Guidi v. Inter-Continental Hotels Corp.*,
    No. 95 Civ 9006, 2003 WL 1907901 (S.D.N.Y. Apr. 16, 2003) ........................................... 15

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990) ........................................................................................... 4

*Hoffenberg v. Hoffman & Pollok*,
    248 F. Supp. 2d 303 (S.D.N.Y. 2003) ........................................................................... 9

*Jackson v. Broadcast Music, Inc.*,
    No. 04 Civ. 5948 (TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006),
    *aff'd*, No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007) ................................... 9, 10

*Johnston v. One America Prods., Inc.*,
    No. 2:07 CV 042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007) ................................... 13

*Lemerond v. Twentieth Century Fox Film Corp.*,
    No. 07 Civ. 4635 (LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ................................ 17

*Levin v. McPhee*,
    917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) ................................ 19

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ........................................................................................... 9

*Myskina v. v. Conde Nast Publ'ns, Inc*,
    386 F. Supp. 2d 409 (S.D.N.Y. 2005)................................................................. 17, 18

*Nunez v. A-T Fin. Info. Inc*.,
    957 F. Supp. 438 (S.D.N.Y. 1997)................................................................. 18, 19

*Preston v. Martin Bregman Prods., Inc.*,
    765 F. Supp. 116 (S.D.N.Y. 1991)................................................................. 19

*Republic of Ecuador v. Chevrontexaco Corp.*,
    426 F. Supp. 2d 159 (S.D.N.Y. 2006)................................................................. 15

*Scala v. Sequor Group, Inc.*,
    No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995)............................ 9, 14

*Skylon Corp. v. Guilford Mills, Inc.*,
    864 F. Supp. 353 (S.D.N.Y. 1994)................................................................. 8

*U.S. ex rel. Smith v. New York Presbyterian Hosp.*,
    No. 06 Civ. 4056(NRB), 2007 WL 2142312 (S.D.N.Y. July 18, 2007).................................. 8

*Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*,
    373 F. Supp. 2d 360 (S.D.N.Y. 2005)................................................................. 10

*Yurman Design Inc. v. Chaindom Enters., Inc.*,
    No. 99 Civ. 9307 (JFK), 2000 WL 897141 (S.D.N.Y. July 5, 2000)...................................... 7

*Zoll v. Jordache Enters., Inc.*,
    No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002)............................ 17

*Zoll v. Ruder Finn, Inc.*,
    No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260
    (S.D.N.Y. Jan. 7, 2004)................................................................. 17

<u>State Cases</u>

*Cleghorn v. Scribner*,
    597 So. 2d 693 (Ala. 1992)................................................................. 15

*Doe v. American Broad. Cos.*,
    152 A.D.2d 482, 543 N.Y.S.2d 455 (1st Dep't), *appeal dismissed*, 74
    N.Y.2d 945, 550 N.Y.S.2d 278 (1989) ................................................................. 19

*Doe v. One America Prods., Inc.*,
    SC091723 (Sup. Ct. Los Angeles Co. Feb 15,2007)………………………………..…….13

*Falconieri v. A & A Discount Auto Rental,*
262 A.D.2d 446, 692 N.Y.S.2d 137 (2d Dep't 1999)............................................. 15

*Hampton v. Guare,*
195 A.D.2d 366, 600 N.Y.S.2d 57 (1st Dep't 1993)............................................. 17

*Howell v. New York Post Co.,*
81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ..................................................... 18, 19

*Locklear Dodge City, Inc. v. Kimbrell,*
703 So. 2d 303 (Ala. 1997).................................................................................. 3

*Morby v. Di Siena Assocs. LPA,*
291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002)............................................ 10

*Shklovskiy v. Khan,*
273 A.D.2d 371, 709 N.Y.S.2d 208 (2d Dep't 2000)............................................. 8

*Touloumis v. Chalem,*
156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989)........................................ 8, 10

*Weil v. Johnson,*
No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Co. Sept. 27, 2002) ................. 11, 12, 13

Federal Statutes/Rules

Fed. R. Civ. P. 9(b)...................................................................................................9

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 7

State Statutes

New York Civil Rights Law § 51 ..................................................................... 17, 18

\\\NY - 027721/000009 - 1083375 v1

Defendants Twentieth Century Fox Film Corporation ("Fox"), One America Productions, Inc. d/b/a Springland Films (incorrectly sued herein as a separate entity) ("One America"), Todd Lewis Schulman ("Schulman"), Monica Levinson (incorrectly sued herein as "Monica Levenson") ("Levinson"), Julie Lynn Chouinard (incorrectly sued herein as "Julie Lynn Chounard") ("Chouinard"), Everyman Pictures ("Everyman"), and Dune Entertainment LLC ("Dune") (collectively, "Defendants"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "Complaint") of plaintiffs Cindy Streit ("Streit"), Sarah Moseley ("Moseley"), Ben K. McKinnon ("McKinnon"), Michael M. Jared ("Mr. Jared") and Lynn S. Jared ("Mrs. Jared") (collectively "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## Preliminary Statement

A group of Alabama residents allege they agreed to have dinner with someone whom they were told was a visitor from a foreign country. They understood that their appearance at the dinner would be filmed for a possible future motion picture. In agreeing to appear in the film, these residents received money for their participation and signed an agreement which waived any claims that could possibly arise from their appearances. During the filming process, they allegedly became uncomfortable with various statements and actions by the foreign visitor. Later they learned that they appeared in the popular motion picture *Borat: Cultural Learnings of America For Make Benefit Glorious Nation of Kazakhstan* ("the Film")*. The residents now sue for fraud, unjust enrichment, and intentional infliction of emotional distress because they claim that they had no idea that they were going to appear in a movie that they believe is humiliating

---

[1]    The facts necessary for the determination of this motion are set forth in the accompanying declarations of Joan Hansen ("Hansen Decl."), sworn to on the 9th day of May, 2008, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to on the 12th day of May, 2008, and the exhibits annexed thereto.

and degrading.  However, their post-facto claims are absolutely barred by the consent agreements they signed (but allegedly did not read thoroughly).  Indeed, plaintiff Cindy Streit had a subsequent dispute with the producer of the Film (which was resolved by payment to her of additional monies) and in connection therewith signed a separate release, waiving all claims she might have relating to the Film.  In short, the consent agreements signed by the Plaintiffs and the release signed by Streit completely bar all of the claims set forth in the Complaint.

## **Factual Background**

### A.   **The Parties**

Plaintiffs are, according to the Complaint, residents of the State of Alabama.  Compl. ¶ 1-5.  Metcalf Decl., Exhibit ("Ex.") C.   Defendant Fox distributed the Film, which was produced by defendant One America.  Hansen Decl. ¶¶ 8-9.   One America has registered the tradenames Springland Films ("Springland") and Belarus Television.  *Id.* ¶ 1.  Defendant Everyman is the "loan-out" corporation for Jay Roach, who is one of the producers of the Film.  *Id.* ¶ 10.  Defendant Levinson is an executive producer of the Film.  *Id*. ¶ 11.  Defendants Schulman and Chouinard were employed by One America as a field supervisor and a film coordinator, respectively, for the Film.  *Id*. ¶ 12.  Defendant Dune was a passive investor in the Film.  *Id*. ¶ 13.

### B.   **Procedural History**

#### 1.    The Alabama Action

On or about October 22, 2007, Plaintiffs filed a complaint in the United States District Court for the Northern District of Alabama asserting several causes of action against Defendants arising out of their appearance in the Film.  Metcalf Decl. ¶ 2.  On December 5, 2007, Defendants moved to transfer, or in the alternative to dismiss, the complaint for improper venue.  *Id.* ¶ 3.  On January 24, 2008, the court granted the motion insofar as it transferred this action to this Court (the "Order").  *Id.*, Ex. A.  In the Order, the court held that, despite Plaintiffs' allegations that they

\\\NY - 027721/000009 - 1083375 v1

were defrauded into signing separate Standard Consent Agreements (collectively, the "Consent Agreements"), they were all bound by the forum-selection clause those agreements contained. *Id.*

Plaintiffs moved to vacate the Order, and on January 30, 2008, the court denied that motion, holding instead that Plaintiffs' allegations that they signed the Consent Agreements without "thoroughly read[ing]" them because they "were mislead by the use of the term 'standard'" and because "they were rushed into signing" the Consent Agreements, did not render the forum-selection clause in the Consent Agreements unenforceable (the "Second Order"). Metcalf Decl., Ex. B. To the contrary, the court stated that:

> under Alabama law, "a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document." … Had the plaintiffs read the Standard Consent Agreement, it would have been apparent from the clear and unambiguous language in the forum selection clause that all claims must be brought in the State and County of New York.

*Id.* (quoting *Locklear Dodge City, Inc. v. Kimbrell,* 703 So. 2d 303, 306 (Ala. 1997)).

2.    The New York Action

After transfer of this action to this Court was completed, the parties agreed that Plaintiffs would file an amended complaint and they did so on April 7, 2008. The Complaint stems from the circumstances surrounding Plaintiffs' appearances in the Film. *See generally* Compl. Streit, the owner of an etiquette training business, alleges in the Complaint that she was asked to appear with a few friends of her choosing in an "educational documentary" that Springland was making about a "foreign dignitary's tour of the United States," which would be shown on "Belarus Television." *Id.* ¶¶ 25-26, 29. After meeting with individuals affiliated with the Film, Streit picked Moseley, McKinnon and Mr. and Mrs. Jared to be filmed with Streit on October 24, 2005 hosting a "Southern, in-home style dining experience." *See id.* ¶¶ 26, 31-32.

Plaintiffs allege that they were each asked to sign the Consent Agreement, and that they did so based on Defendants' alleged misrepresentations to Streit and McKinnon as to Springland's

\\\NY - 027721/000009 - 1083375 v1

design for the filming.  Defendants allegedly promised that the "portrayal of the Plaintiffs would

be with the utmost dignity and class." Compl. ¶¶ 73, 94.  Despite this alleged representation by

Defendants, Plaintiffs allege that comedian and actor Sacha Baron Cohen ("Cohen"), who created

and plays Borat, "performed numerous offensive and outrageous acts" at the dinner party that

embarrassed the Plaintiffs.  *Id.* ¶ 34.

As a result of Plaintiffs' involvement in the Film and advertising and promotion for the

Film, Plaintiffs assert four claims in the Complaint: (1) unjust enrichment; (2) fraud/fraudulent

inducement; (3) intentional infliction of emotional distress; and (4) rescission.  *See generally id.*

## C.  **The Releases**

Streit alleges that, on October 24, 2005, she signed a contract with Springland for her

etiquette training services (the "ETS Contract").  Compl. ¶ 33.  *See* Hansen Decl., Ex. C.[2]

---

[2]    The inclusion of the ETS Contract does not convert this motion to dismiss to one for
summary judgment because Streit has relied on the terms and effect of the ETS Contract in
the Complaint.  *See* Compl. ¶ 33.  *See also Broder v. Cablevision Sys. Corp.,* 418 F.3d 187,
196 (2d Cir. 2005) (internal quotations omitted) (on a motion to dismiss, a court "is not
limited solely to the allegations in the complaint. ... Where a plaintiff has relied on the
terms and effect of a document in drafting the complaint and that document is thus integral
to the complaint, [a court] may consider its contents even it if is not formally incorporated
by reference").  Similarly, the inclusion of the Release of Liability, Consent Agreements
and the Film, do not convert this motion to dismiss to one for summary judgment because
Plaintiffs explicitly referenced and relied on them in the Complaint.  *See, e.g.,* Compl. ¶¶
24, 44, 61, 62, 78, 100.  *See also 2 Broadway L.L.C. v. Credit Suisse First Boston
Mortgage Capital, LLC*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *5 (S.D.N.Y. Apr.
23, 2001) (considering releases that were not attached to the complaint on a motion to
dismiss because "the Complaint explicitly references them").

Notably, the terms of the alleged ETS Contract as quoted by Streit in the Complaint are
different from those of the fully executed ETS Contract as entered into by Streit and
Springland.  Indeed, Streit alleges that there is a whole paragraph in the ETS Contract that
simply does not exist in the version signed by Springland.  But, this Court need not reach
the question of the ETS Contract's validity, because the ETS Contract has been superseded
by two subsequent releases, the Consent Agreement and the Release of Liability, in which
Streit expressly discharged Springland from any contracts and agreements between Streit
and Springland.  *See* pages 7-9, *infra.  See also Health-Chem Corp. v. Baker*, 915 F.2d 805,
811 (2d Cir. 1990).

\\\NY - 027721/000009 - 1083375 v1

On October 24, 2005, each of the Plaintiffs (including Streit) individually entered into a six-paragraph Consent Agreement with Springland. *See* Hansen Decl., Ex. D. In the Consent Agreements, all of which are identical, Plaintiffs voluntarily agreed, among other things, that "in entering into [the Consent Agreements, Plaintiffs are] not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film." Consent Agreements ¶ 5. Further, each plaintiff agreed:

> [N]ot to bring any time in the future, any claims against [Springland], or against any of its assignees or licensees or anyone associated with the Film, which are related to the Film or its production, including but not limited to, claims involving assertions of … (c) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the [Plaintiff's] name or likeness of image, ... (f) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (g) false light (such as any allegedly false or misleading portrayal of [Plaintiff], (h) infliction of emotional distress (whether allegedly intentional or negligent) ... (j) breach of any alleged contract (whether the alleged contract is verbal or in writing), (k) allegedly deceptive business or trade practices, ... (n) … allegedly false or misleading statements or suggestions about the [Plaintiff] in relation to the Film or the Film in relation to the [Plaintiff], (o) prima facie tort (such as alleged intentional harm to [Plaintiff]), (p) fraud (such as any alleged deception about the Film or this consent agreement) ....

*Id.* ¶ 4. In addition, the Consent Agreements state that Springland "shall be exclusively entitled to use, or to assign or license to others the right to use, the Film and any recorded material that includes the [Plaintiffs] without restriction in any media throughout the universe in perpetuity ..." and Plaintiffs "agree[] to allow [Springland], and any of its assignees or licensees, to use [Plaintiffs'] contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film…." *Id.* ¶ 2. Further, the Consent Agreements state that "This is the entire agreement between [the Plaintiffs and Springland] or anyone else in relation to the Film …." *Id.* ¶ 5. After signing the Consent Agreements, Plaintiffs participated in the filming of their appearances for the Film. *Id.*. ¶¶ 34-42.

Almost a month after the filming, Streit and Springland on November 16, 2005, entered

\\\NY - 027721/000009 - 1083375 v1

into a release of liability (the "Release of Liability").  Pursuant to the terms of the Release of

Liability, in exchange for $4,450.00, Streit released and discharged Springland

> and its related entities, shareholders, directors, officers, employees and agents
> (collectively, "Released Parties") from and against *any and all claims,* liabilities,
> contracts, agreements, *causes of action,* costs, expenses *and obligations of every
> kind and nature whatsoever* against any of the Released Parties in connection with
> all services relating to the Dinner Party and Training Session on 10/23/05 and all
> time leading up to and after that event ….

Release of Liability at 1.  *See* Hansen Decl., Ex. E.

## D.   **The Film**

The Film was first released in theaters in the United States on or about November 3, 2006,

and on DVD in the United States on March 6, 2007.  Hansen Decl. ¶ 8.  The documentary-style

Film tells the story of Borat, a fictional Kazakh TV personality dispatched to the United States by

the Kazakhstan Ministry of Information to report on the American people.  *See* Hansen Decl., Ex.

A.

In the Film, Borat travels across America with his friend and producer, Azamat Bagatov.

*Id*.  During this transcontinental journey, Borat encounters a homophobic rodeo owner, kindly

Jewish inn keepers, drunken fraternity boys and various other individuals.  *Id.*  Cohen employs

antics ranging from buffoonery to eccentric and prejudicial commentary in order to evoke

reactions from the Americans whom Borat encounters.  *See id.*  In keeping with this theme,

Plaintiffs are depicted in one scene dining with Borat while Borat attempts to use the lessons he

learned earlier that day from an American etiquette coach to "dine like [a] gentleman" (the

"Scene").[3]  *See* Hansen Decl., Ex. B.  During dinner, Borat makes several comments regarding the

physical appearance of one of the guests (who is not a party to this lawsuit), mistakenly refers to

---

[3]      In the Film, Streit hosts a dinner party for six (6) guests.  Only four of those guests have
joined this lawsuit.  Other than Mr. Jared, who identifies himself as the individual Borat
describes as "retarded," the Complaint does not contain sufficient details to identify
Moseley, McKinnon or Mrs. Jared.

Mr. Jared (who is "retired") as "retarded," and carries a bag allegedly containing feces to the dinner table.  *Id.*  The Film also contains a scene in which the dinner party guests leave the party as a result of Borat's activities.  *Id.*

**ARGUMENT**

**THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY**

This Court should dismiss Plaintiffs' Complaint because each plaintiff is bound by the Consent Agreements releasing Defendants from liability from all of the claims asserted here. Indeed, the claims asserted by Streit are barred by *both* the Consent Agreement and the Release of Liability she signed over *three weeks after* filming.  Further, even if Plaintiffs were not bound by the Consent Agreements, Plaintiffs' claims for unjust enrichment and intentional infliction of emotional distress fail on the merits.

**A.   Motion To Dismiss Standard**

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court "must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998).  To survive a motion to dismiss, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory."  *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000).

**B.   Plaintiffs' Claim For Fraudulent Inducement Must Fail Because They Are Bound By The Clear Language Of The Consent Agreements**

This Court should dismiss Plaintiffs' fraudulent inducement claims because Plaintiffs are bound by the Consent Agreements. [4]  Under New York law, which governs the Consent

---

[4]      Plaintiffs asserts one claim for fraud/fraudulent inducement for damages based on the Consent Agreements and the Release of Liability (claim two) and another claim for

\\\NY - 027721/000009 - 1083375 v1

Agreements (Consent Agreements ¶ 6),[5] releases are considered to be contracts, and therefore are interpreted according to principles of contract law. *Shklovskiy v. Khan*, 273 A.D.2d 371, 372, 709 N.Y.S.2d 208, 209 (2d Dep't 2000). New York courts consider releases to be a serious and necessary part of our judicial system: "A release may not be treated lightly. It is a jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Touloumis v. Chalem*, 156 A.D.2d 230, 231, 548 N.Y.S.2d 493, 494 (1st Dep't 1989) (internal quotation omitted). Indeed,

> It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties. Thus, a release will be binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense. Moreover, in the absence of a fiduciary relationship, a party seeking to avoid an otherwise valid release has the burden of proving vitiating circumstances.

*Skylon Corp. v. Guilford Mills, Inc.*, 864 F. Supp. 353, 358 (S.D.N.Y. 1994) (Preska, J.) (internal quotations and citations omitted).

In order to avoid the conclusive effect of a release due to allegations of fraudulent

---

rescission of the Consent Agreements (claim four). Both claims are based on the same allegedly fraudulent misrepresentations. *Cf.* Compl. ¶¶ 73, 94. Because recession is simply an equitable remedy to a cause of action for fraud, Defendants address Plaintiffs' fraud and rescission "claims" as one cause of action. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984) (stating that fraud "serves as a basis for an action for money damages or for rescission of a release") (internal quotations and citations omitted).

[5]   New York law governs Plaintiffs' claims as based on the Consent Agreements. In fact, the Northern District of Alabama has already held that Plaintiffs are bound by the forum selection clause in the Consent Agreements – the very clause that contains the choice-of-law provision. Order at 2, 4-5. Accordingly, Plaintiffs are precluded from arguing that any other state's law governs the Consent Agreements. *See U.S. ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 Civ. 4056(NRB), 2007 WL 2142312, *9 (S.D.N.Y. July 18, 2007) (applying law of the case to bar reconsideration of a matter decided by the transferor court, because "[w]hen a case has been transferred from one district to another, the doctrine counsels against the transferee court reevaluating the rulings of the transferor court unless the governing law has been changed by an intervening decision of a superior court, new evidence has become available, a clear error has been made or reversal is necessary to prevent 'manifest injustice'") (internal quotation omitted).

8

inducement, a party must prove: "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003). Fraud must be proved by clear and convincing evidence. *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986). Further, under Fed. R. Civ. P. 9(b), a party pleading fraud must allege "the circumstances constituting fraud or mistake ... with particularity." Fed. R. Civ. P. 9(b). As such, to meet this standard, a plaintiff must "adequately specify the statements he claims were false or misleading, give particulars as to the respect in which he contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Scala v. Sequor Group, Inc.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *3 (S.D.N.Y. Apr. 14, 1995) (Preska, J.).[6]

1.    Plaintiffs' Fraudulent Inducement Claim Must Fail Because The Alleged
      Misrepresentations Are Contradicted By The Face Of The Consent Agreements

This Court should dismiss Plaintiffs' fraudulent inducement claims because Plaintiffs cannot establish reasonable reliance on any alleged misrepresentations. "Reasonable reliance is

---

[6]    Plaintiffs have failed to meet this heightened pleading standard. The Complaint alleges only that Schulman misrepresented the nature of the Film to Streit and McKinnon and Defendants Levinson and Chouinard misrepresented the Film to Streit. Compl. ¶¶ 26, 28, 29, 33. Plaintiffs do not allege that Dune, Fox or Everyman misrepresented anything to anyone. As such, the fraud claims fail against these Defendants. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (noting that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants,'" and dismissing fraud claim for plaintiffs' failure to link the alleged fraudulent statements to particular defendants). Moreover, Plaintiffs Moseley and Mr. and Mrs. Jared do not allege that any of the Defendants misrepresented anything to them. *See generally* Compl. As such, Plaintiffs Moseley and Mr. and Mrs. Jared's fraudulent inducement claims fail to meet the Rule 9(b) pleading requirement and their fraudulent inducement claims should be dismissed.

9

an essential element of a claim of fraud." *Jackson v. Broadcast Music, Inc.,* No. 04 Civ. 5948 (TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006), *aff'd,* No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007).  And, "[r]easonable reliance cannot be adequately pleaded where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." *Id.* (dismissing fraudulent inducement claim because the one-page agreement at issue was clear that plaintiff was releasing his rights to his music, so "Plaintiff could not reasonably have relied on any alleged misrepresentation to the contrary").  For example, "[a] plaintiff's ability to establish reasonable reliance is irreparably impaired when [she] simply fails to read a binding document prior to executing the document." *Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005).  New York courts reason that a party cannot merely blindly rely on another's representations because "[a] party is under an obligation to read a document before he or she signs it, and one cannot generally avoid the effect of a release upon the ground that he or she did not read it or know its contents." *Touloumis*, 156 A.D.2d at 232, 548 N.Y.S.2d at 495.

For example, in *Morby v. Di Siena Assocs. LPA,* 291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002), the plaintiff sought damages stemming from an injury he sustained while doing work for the defendants.  The plaintiff, however, had signed a personal injury release – without reading it.  The plaintiff claimed that the defendants fraudulently stated the release was merely a "labor and materials release." *Id.* 291 A.D.2d at 604-605, 737 N.Y.S.2d at 679-680.  The court held that the plaintiff's complaint must be dismissed because:

> [E]ven accepting as true plaintiff's allegations concerning the misrepresentations ...
> a reading of the simple, straightforward document would have readily advised him
> that he was indeed discharging all claims against defendants for 'personal injury' ...
> Having failed to read the release before signing it, plaintiff simply cannot establish
> the essential element of justifiable reliance....  Plaintiff cannot now avoid his
> obligations under a release he did not read merely by asserting that he 'thought' it

\\\NY - 027721/000009 - 1083375 v1

was something else.

*Id.* 291 A.D.2d at 605, 737 N.Y.S.2d at 680.

Here, the plain language of the Consent Agreements both accurately describes the Film and clearly sets forth the scope of the waiver. Thus, Plaintiffs should have certainly understood that by signing the Consent Agreements they were agreeing to waive their right to bring all of the claims they have now asserted against Defendants. Therefore, even if Plaintiffs' allegations regarding Defendants' misrepresentations were true (and for the purposes of this motion we must assume they are), they cannot avoid their obligations under the Consent Agreements by claiming they thought the Film was something other than what it turned out to be.

Indeed, this case is just like *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *1 (Sup. Ct. N.Y. Co. Sept. 27, 2002). At issue in *Weil* was a film entitled "Born Rich," a documentary about the lives of children who grew up very wealthy. *Id.* *1. The plaintiff, Luke Weil—heir to the Autotote gaming empire—was one of the eleven individuals profiled in the documentary, which was made by Jamie Johnson, an heir to the Johnson & Johnson fortune. *Id.* at *1. Before participating in the interview for the film, Weil signed three separate release forms. The releases, which appeared under the letterhead of "Black River Films, Inc." along with a Beverly Hills address, contained a general release for the filmmakers to use any footage of the interview in any manner they wished in connection with the film. The release also stated, "I am granting these rights in exchange for good and valuable consideration, receipt of which is hereby acknowledged. I hereby waive any right to injunctive or other equitable relief in connection with the development production, distribution or other exploitation of the Picture." *Id.* at *1-2.

After Johnson completed the documentary, and it was set to be released, Weil sued seeking a declaration that the releases were nullities because they were fraudulently obtained and for an injunction preventing the release of the film. Weil alleged that when Johnson solicited his

11

participation, Johnson "assured Weil that 'the singular purpose and expected utilization of the interview was solely for non-commercial purposes and merely in furtherance of a *school project*.'" *Id.* at *2 (emphasis added). Despite Weil's arguments, the court rejected his claim of fraud noting, "Weil's allegations are contradicted by the very face of the Release, *which clearly alerted him to the fact that the enterprise was not a 'student project,'* but rather was a commercial production being undertaken by a professional studio based in Beverly Hills, California." *Id.* (emphasis added). Furthermore, the court noted that it is well settled that "a plaintiff may not avoid his obligations under a clearly worded release on the ground that the defendant falsely misrepresented the true significance of the document to him in order to secure his signature." *Id.* at *2. As such, the court concluded that the releases "signed by plaintiff appear valid and binding on their face." *Weil,* 2002 WL 31972157, at *3.

Similarly, here, Plaintiffs allege that, by signing the Consent Agreements, they were apparently relying on Schulman's representations to Streit and McKinnon that the Film was a "documentary … in the nature of those shown by National Geographic" and would be shown on "Belarus Television." Compl. ¶ 29; *see also id.* ¶¶ 73, 94. As a preliminary matter, it is somewhat difficult to understand the exact nature of the alleged misrepresentations because, in their Complaint, Plaintiffs do not (and perhaps cannot) identify which Defendants allegedly made what statements to which plaintiff. But, even if Plaintiffs had provided this requisite information, their reliance on the alleged misrepresentations would still be misplaced. *All* of the alleged misrepresentations were contradicted by the clear terms of the Release itself. First, the Consent Agreements *never* state that the Film is a "documentary." Instead, the first paragraph of the Consent Agreements states that the document is an agreement for the participant to be paid money in exchange for the "opportunity for the Participant to appear in a *motion picture*...." Consent

12

Agreements at p. 1 (emphasis added). The Consent Agreements flesh out the nature of the project by stating, "The Participant agrees to be filmed and audiotaped by the Producer for a *documentary-style film*,"[7] *id.* ¶ 1 (emphasis added) adding that "[i]t is understood that the *Producer hopes to reach a young adult audience by using entertaining content and formats.*" *Id.* (emphasis added). Further, the Consent Agreements state that Plaintiffs will not bring any claims based on any "offensive behavior or questioning." *Id.* ¶ 4(f). As a result, the Consent Agreements here clearly stated the Film was not merely a documentary about a foreign dignitary's travels to America, but rather an entertaining documentary-*style* motion picture aimed at young adults that may involve "offensive behavior." Moreover, the Consent Agreements *never* state that the Film will only be shown – or indeed, shown at all – on Belarus Television. To the contrary, the Consent Agreements plainly state that Plaintiffs agree "to be filmed and audiotaped by [Springland Films]" and to assign to Springland Films any rights they may have in "any recorded material that includes" the Plaintiffs so as to allow Springland Films to use the material "without restriction in any media throughout the universe in perpetuity and without liability." Consent Agreements ¶¶ 1, 2.

Therefore, it is immaterial that the Complaint alleges that Plaintiffs were told that the Film was an educational documentary for Belarus Television in which the Plaintiffs would be portrayed with "dignity and class"– Plaintiffs cannot now disregard the clear provisions in the Consent

---

[7]     Plaintiffs allege that the Film is not a "'documentary-style' movie." Compl. ¶ 62. This is incorrect. Indeed, two courts have already concluded that the Film is a documentary-style film. *See Doe v. One America Prods., Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) (Film is a "part documentary" which "utilizes the reactions and statements of people … to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.") (A true and correct copy of this decision is annexed as Exhibit A hereto); *Johnston v. One America Prods., Inc.*, No. 2:07 CV 042-P-B, 2007 WL 2903218, *5 (N.D. Miss. Oct. 2, 2007) (Film "is not simply an ordinary, expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres ….").

Agreements that they admit they signed. Therefore, their fraudulent inducement claims must fail.

2.    Plaintiffs' Fraudulent Inducement Claim Also Must Fail
      Because Plaintiffs Disclaimed Reliance On Statements About The Film

This Court also should dismiss Plaintiffs' fraudulent inducement claims because the Consent Agreements clearly state that Plaintiffs were not relying on any representations about the nature of the Film. When a release "expressly states that the releasor disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Fonseca v. Columbia Gas Sys., Inc.,* 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998). *See also Scala,* 1995 WL 225625, at *6 (holding that plaintiff "is barred from pursuing his claim that he was defrauded into signing his contracts ... [because plaintiff] disclaimed reliance upon any representations").

Here, the Consent Agreements Plaintiffs admittedly signed clearly state that Plaintiffs "acknowledge[] that in entering into [the Consent Agreements, Plaintiffs are] not relying upon any promises or statements made by anyone about the *nature of the Film* or *the identity of any other Participants or persons involved in the Film*." Consent Agreements ¶ 5 (emphasis added). Further, the Consent Agreements also state that Plaintiffs waived their right to bring any fraud claims against Defendants "such as any alleged deception or surprise about the Film or this consent agreement." *Id.* ¶ 4(p). Accordingly, Plaintiffs have disclaimed reliance on the very representations they now cite to make their claim. *See* Compl. ¶¶ 29, 54, 73, 94. Therefore, Plaintiffs' fraudulent inducement claims should be dismissed.

## C.    Streit's Claims Are Barred By The Release of Liability

In addition, this Court should dismiss all of Streit's claims on the additional, independent ground that she signed a Release of Liability weeks after the dinner party at issue was filmed and after Cohen had performed the "numerous offensive and outrageous acts" alleged in the

14

Complaint. Compl. ¶ 34. The law is absolutely clear, that "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties." *Falconieri v. A & A Discount Auto Rental*, 262 A.D.2d 446, 447, 692 N.Y.S.2d 137 (2d Dep't 1999) (internal quotation omitted).[8] Where a party enters into a release *after* the alleged injury occurred, she "cannot … avoid the obligation [under the release] by merely stating that she did not understand its terms" or because "the plaintiff was mistaken as to the consequences or future course of a known injury." *Id.* (dismissing complaint where plaintiff entered into release "18 days after" she was injured by the defendant in car accident.)

In this case, Streit alleges that she was fraudulently induced to enter into both the Consent Agreement and the Release of Liability by Defendants' alleged misrepresentations on or before October 24, 2005 – the date of the filming. Compl. ¶¶ 73, 78. But, Streit fails to mention that she signed the Release of Liability on November 16, 2005, *almost one month after* the alleged fraudulent misrepresentations – *after* Streit appeared in the Scene for the Film, *after* Cohen made

---

[8]     New York law applies to any dispute regarding the Release of Liability because there is no actual conflict between the substantive laws of New York and Alabama – the state where Streit entered into the Release of Liability and where it was negotiated. A New York federal court sitting in diversity (as here) applies the choice of law rules of the forum state. *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ 9006, 2003 WL 1907901, at *1 (S.D.N.Y. Apr. 16, 2003) (Preska, J.). Under New York law, a court should apply New York law if there is no actual conflict between the laws of different jurisdictions. *See id.* (applying New York law because there was no conflict between the laws of New York and Egypt); *Republic of Ecuador v. Chevrontexaco Corp.*, 426 F. Supp. 2d 159 (S.D.N.Y. 2006) (Applying New York contract law because no evidence that there was an actual conflict between New York and Ecuadorian law). Here, under the laws of New York or Alabama "in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties from what appears within the four corners of the instrument itself …." *Cleghorn v. Scribner*, 597 So. 2d 693, 696 (Ala. 1992); *See also Falconieri*, 262 A.D.2d at 447, 692 N.Y.S.2d at 137 (same). Further, under the laws of both states, where a party enters into a release *after* the alleged injury occurred, they may not avoid their obligations under the release by claiming they were mistaken about the consequences of a known injury or by claiming they did not understand the terms of the release. *Id.* As such, there is no actual conflict of law and New York law applies to this action.

the alleged offensive comments, *after* Cohen brought feces to the table and *after* it should have been clear that she was not being filmed for an "educational documentary." *Id*. ¶¶ 25-26, 29.  In fact, Streit signed the Release of Liability following the alleged fraudulent conduct at issue here and knowing full well what happened at the dinner party. *Id*. ¶¶ 25-29, 35-42.  And that Release of Liability absolutely bars her claims.  It reads:

> The undersigned Etiquette Training Services and Cindy Streit (collectively, "Vendor") in consideration of $2950 (already paid) + $1500 hereby releases and discharges SPRINGLAND FILMS, and its related entities, shareholders, directors, officers, employees and agents (collectively, "Released Parties") from and against *any and all claims,* liabilities, contracts, agreements, *causes of action,* costs, expenses *and obligations of every kind and nature whatsoever* against any of the Released Parties in connection with all services relating to the Dinner Party and Training Session on 10/23/05 and all time leading up to and after that event "Services."[9]

Release of Liability at 1 (emphasis added).  Accordingly, Streit knowingly released the very claims she now brings – and she did so *after* the alleged wrongful conduct by Defendants.  As such, Streit is absolutely barred from asserting any of the claims in the Complaint on this additional ground.

**D.    Plaintiffs' Claim For Unjust Enrichment Must Fail Because It Is Barred By The Consent Agreements And Because It Is Preempted By Section 51**

This Court should also dismiss Plaintiffs' first cause of action for unjust enrichment.  First, Plaintiffs specifically released their right to bring *any* claims that include assertions of "infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the [Plaintiffs'] name or likeness of image," or breach of contract or allegedly deceptive business or trade practices.  Consent Agreements ¶¶ 4(c), (j), 4(k); *see also* Release of Liability (Streit released her right to bring "any and all claims").  Hence, Plaintiffs released their

---

[9]    The date in the Release of Liability of October 23, 2005 is obviously a typographical error because, as Streit alleges in the Complaint, the "training session and dinner" took place on October 24, 2005.  *See* Compl. ¶ 33.

unjust enrichment claims.

Second, even if Plaintiffs had not released these claims, they should still be dismissed because no cause of action for unjust enrichment for the use of a plaintiff's likeness exists under New York law – it is preempted by New York Civil Rights Law § 51 ("Section 51").  As one court explained:

> The New York Civil Rights law preempts all common law claims based on unauthorized use of name, image, or personality…. The Civil Rights Law does not simply cover or define common law claims, it provides an exclusive remedy for cases such as the one at bar.  That is to say *there is no cause of action for unjust enrichment arising from the alleged unauthorized use of personal image*.

*Zoll v. Ruder Finn, Inc.,* No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260 , at *4 (S.D.N.Y. Jan. 7, 2004) (emphasis added).  *See Myskina v. v. Conde Nast Publ'ns, Inc,* 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005) ("[u]nder New York law, common law unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51" and must be dismissed); *Hampton v. Guare*, 195 A.D.2d 366, 366-67, 600 N.Y.S.2d 57, 58-59 (1st Dep't 1993) (common law claims barred because "plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law").  Indeed, even where a plaintiff uses creative pleading in an attempt to save a common law claim from the preemptive effect of Section 51, "New York courts have refused to recognize [these] efforts to present statutory privacy claims as common law claims where the claim is based on alleged unauthorized use of a plaintiff's image or likeness and have refused to exalt form over substance when a plaintiff attempts to do so." *Zoll v. Jordache Enters., Inc.,* No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *16 (S.D.N.Y. Dec. 24, 2002) (dismissing trespass and unjust enrichment claims because they are "in substance, based on the unauthorized use of [plaintiff's] image for commercial purposes"); *see also Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635 (LAP), 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) (dismissing quantum meruit claim

17

because "common law claims related to unauthorized use of a person's image or likeness are subsumed under §§ 50 and 51").

Here, Plaintiffs' unjust enrichment claims are expressly based on Defendants' use of their images in the Film. Compl. ¶¶ 68 ("Defendants unjustly received the benefit of the Plaintiffs' participation in the *Borat* movie which resulted in the movie being an extremely profitable venture"). As such, their claims are preempted by Section 51 and should be dismissed.[10]

### E.    Plaintiffs' Intentional Infliction Claim Must Fail Because It Is Barred by The Consent Agreements And It Fails On The Merits

Finally, this Court should dismiss Plaintiffs' third cause of action for intentional infliction of emotional distress. First, the claim is specifically barred by the Plaintiffs' Consent Agreements, which waive Plaintiffs' rights to bring any claims for "infliction of emotional distress (whether allegedly intentional or negligent)" and Streit's Release of Liability, which releases "any and all" claims against Defendants. Consent Agreements ¶ 4(h), Release of Liability.

Second, Plaintiffs cannot make out the elements of an intentional infliction of emotional distress claim. The elements are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993). As this very Court has recognized, New York "[c]ourts have relied on the outrageousness element to set reasonable bounds on this potentially limitless tort and have required that the plaintiff allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[10]    Further, Plaintiffs' rationale for asserting an unjust enrichment claim rather than a Section 51 claim is obvious: such a claim would be unsuccessful because the statute bars a Section 51 claim if there is a valid release. *See Myskina*, 386 F. Supp. 2d at 414-15.

regarded as atrocious, and utterly intolerable in a civilized community." *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 442 (S.D.N.Y. 1997) (Preska, J.) (internal quotation omitted). "Moreover, the Second Circuit has interpreted New York law as requiring that the conduct which allegedly caused the emotional distress be intentionally directed at the plaintiff without any reasonable justification …." *Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997). Indeed, "New York courts appear to require that plaintiffs allege either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats …." *Nunez,* 957 F. Supp. at 442.

Under this standard, courts routinely hold that the publication of plaintiff's image without their consent (or the publication of false and defamatory or private, personal – even humiliating – facts) does not amount to extreme and outrageous conduct. *See Preston v. Martin Bregman Prods., Inc.,* 765 F. Supp. 116, 120 (S.D.N.Y. 1991) ("Merely publicizing private, personal facts does not amount to such a claim" and holding that the use of plaintiff's image in a movie without her consent does not constitute extreme and outrageous conduct); *Doe v. American Broad. Cos.,* 152 A.D.2d 482, 483, 543 N.Y.S.2d 455 (1st Dept.) (breaking promise to disguise rape victims' identities in broadcast with result that victims voices and faces were recognizable does not constitute outrageous conduct), *appeal dismissed,* 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (1989); *Levin*, 917 F. Supp. at 242-43 (publication of a single, allegedly false or defamatory article about a plaintiff does not constitute extreme and outrageous conduct as a matter of law). Indeed, dismissal is appropriate even when the publication of private facts is accompanied by alleged misconduct on the part of the publisher. *See Howell,* 81 N.Y.2d at 125-26, 596 N.Y.S.2d at 355-56 (conduct of a photographer who allegedly trespassed on the secluded grounds of a private psychiatric facility and took a picture of plaintiff next to a well-known patient was not

sufficiently "atrocious, indecent [or] utterly despicable" to warrant a claim); *Nunez*, 957 F. Supp. at 442-43 (dismissing intentional infliction claim because defendants' "boorish, vulgar, and reprehensible" conduct of expressing vile and sexist statements to the plaintiff in public "does not rise to the level of outrageousness required by the caselaw").

Here, as in *Howell* and *Nunez,* Plaintiffs simply do not allege the kind of consistent, harassing and abusive conduct that gives rise to an intentional infliction of emotional distress claim.  They allege only that they were embarrassed and humiliated to appear in a movie they found offensive.  Compl. ¶¶ 56, 82, 85.  Therefore, Plaintiffs cannot make out the elements of their claim.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: May 12, 2008                    Respectfully submitted,
                                       HOGAN & HARTSON LLP


                                       By: _____/s/_____
                                       Slade R. Metcalf (SM 8360)
                                       Katherine M. Bolger (KB 6206)
                                       Rachel F. Strom (RS 9666)
                                       HOGAN & HARTSON LLP
                                       875 Third Avenue
                                       New York, NY 10022
                                       Tel: (212) 918-3000

                                       *Attorneys for Defendants Twentieth Century*
                                       *Fox Film Corporation, One America*
                                       *Productions, Inc., Todd Lewis Schulman,*
                                       *Monica Levinson, Julie Lynn Chouinard,*
                                       *Everyman Pictures, and Dune Entertainment LLC*

**<u>EXHIBIT A</u>**

**To Defendants' Memorandum of Law
in Support of Their Motion to Dismiss the First Amended Complaint**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

DEPT. WEC

HONORABLE  JOSEPH S. BIDERMAN     JUDGE

K. SANDOVAL     DEPUTY CLERK
R. WHITE, CSL/CT. ASST.

HONORABLE
#5     JUDGE PRO TEM     ELECTRONIC RECORDING MONITOR

NONE     Deputy Sheriff

NONE     Reporter

| 2:30 pm | SC091723 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | JOHN DOE I ET. AL.<br>VS<br>ONE AMERICA PRODUCTIONS,INC. ET AL. | Defendant Counsel | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER;

Court rules on Special Motion to Strike taken under
submission on February 14, 2007 as follows:

SPECIAL MOTION TO STRIKE

Evidentiary Objections

EVIDENTIARY OBJECTIONS BY DEFENDANTS

DECL OF STAUFFER

1.  Para 3 - Sustained - hearsay
2.  Para 4 = Sustained as to any reference to
    "producer" as hearsay
3.  Para 5 - Sustained as to any reference to
    "producer" as hearsay

DECL OF HAMMETT

1.  Para 3 - Overruled
2.  Para 4 - Overruled
3.  Para 5 - Overruled

DECL OF ROTUNDA

1.  Para 14- Sustained as to foundation
2.  Para 15- Sustained as to foundation

Page   1 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

HONORABLE JOSEPH S. BIDERMAN    JUDGE

HONORABLE
#5
NONE    Deputy Sheriff

DEPT. WEC

K. SANDOVAL    DEPUTY CLERK
R. WHITE, CSL/CT. ASST.

JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR

NONE    Reporter

2:30 pm SC091723

JOHN DOE I ET. AL.
VS
ONE AMERICA PRODUCTIONS, INC. ET
AL.

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCES

## NATURE OF PROCEEDINGS:

```
3.    Para 16-  Overruled
4.    Para 17-  Sustained as to hearsay regarding the
                substance of the telephone calls and as
                to foundation regarding level of
                consequences "inevitable"
5.    Para 18   Overruled
6.    Para 19   Sustained as speculation
7.    Para 20   Overruled
```

Merits

As an initial matter, the Court notes that the
only issue before it today is the narrow inquiry of
whether this action constitutes what our Legislature
has denominated as a "SLAPP" - a strategic lawsuit
against public participation.  The propriety of
filming individuals, often in crude contexts and
with a disarming disguise, with the specific intent
of later embarrassing them on a national scale -
even those individuals who, on occasion, exhibit
less than admirable qualities - is not before the
Court.  Rather, the Court's role is constrained to
an examination of the legal issues presented by the
parties.  The Court cannot and does not reach the
topic of whether the Defendants' conduct is
appropriate or conscionable; the only question is
whether a legal claim survives in the manner it has
been drafted in Plaintiffs' Complaint.

Under the two-step process of Section 425.16 of

Page    2 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | | DEPT. WEC |
|---|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. | |
| HONORABLE #5 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| 2:30 pm | SC091723 | | |
|---|---|---|---|
| | | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS,INC. ET AL. | | |

NATURE OF PROCEEDINGS:

the Code of Civil Procedure, the trial court first decides "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity .... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67. "In bringing a section 425.16 motion to strike, the defendant has the initial burden to make a prima facie showing that the plaintiff's claims are subject to section 425.16. If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor." Roberts v. Los Angeles County Bar Assoc. (2003) 105 Cal.App.4th 604, 613 (emphasis added). The Court must consider the pleadings and the evidence submitted by the parties; it cannot weigh the evidence but instead must simply determine whether the plaintiff's evidence would, if credited, be sufficient to meet the plaintiff's burden of proof. Ramona Unified Sch. Dist. v. Tsiknas (2005) 135 Cal.App. 4th 510, 519.

The parties dispute whether Plaintiffs' six causes of action are subject to Section 425.16. As the Court indicated at the lengthy hearing on this

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

HONORABLE JOSEPH S. BIDERMAN          JUDGE

HONORABLE
#5
          NONE                          JUDGE PRO TEM

          NONE                          Deputy Sheriff

DEPT. WEC

K. SANDOVAL          DEPUTY CLERK
R. WHITE, CSL/CT. ASST.
                    ELECTRONIC RECORDING MONITOR

NONE                          Reporter

| 2:30 pm | SC091723 | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | | |

**NATURE OF PROCEEDINGS:**

motion, the Court concludes that Defendants have satisfied their initial burden under the anti-SLAPP statute.

Plaintiffs argue that this case is about misrepresentations, not conduct in furtherance of free speech rights. However, the last four causes of action stated in Plaintiffs' complaint indisputably arise from Defendants' communications (i.e., the movie). As to the first two causes of action (fraud and rescission), though couched in fraud, their gravamen, or principal thrust, goes to the exhibition of the movie. See, e.g., Complaint, paras. 16-18, 21, and 26; Martinez v. Metabolife Internat. Inc. (2003) 113 Cal.App.4th 181, 188 ("[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies..."). Indeed, at oral argument counsel effectively conceded, as he must, that this action would not exist at all if the movie were not playing in the United States.

Further, it is beyond reasonable dispute (and undisputed) that the topics addressed and skewered in the movie - racism, sexism, homophobia, xenophobia, anti- semitism, ethnocentrism, and other societal ills - are issues of public interest, and that the movie itself has sparked significant public awareness and debate about these topics. "The definition of 'public interest' within the meaning

Page    4 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/15/07 | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN            JUDGE | K. SANDOVAL            DEPUTY CLERK |
| | R. WHITE, CSL/CT. ASST. |
| HONORABLE                                JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #5 |  |
| NONE            Deputy Sheriff | NONE            Reporter |

| | | | |
|---|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | | |

**NATURE OF PROCEEDINGS:**

of the anti-SLAPP statute has been "broadly construed." Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 479. Thus, a statement or activity has been held to be in the public interest when it involves a topic of widespread interest. Rivero v. American Fed. of State, County & Mun. Employees, AFL-CIO (2003) 105 Cal.App. 4th 913, 924. Likewise, "[m]ajor societal ills are issues of public interest." Lieberman v. KCOP Television, Inc. (2003) 110 Cal.App.4th 156, 164.

The movie is not about whether these specific plaintiffs held racist, sexist, or anti- Semitic views, but rather concerns the general topics of racism, sexism, homophobia, anti-Semitism, and ethnocentrism, which (as previously noted) are issues of public interest. See, M.G. v. Time Warner, Inc. (2001) 89 Cal.App.4th 623, 629 (courts are to look at the broad topic of an article or program in determining whether the act in furtherance of free speech was related to a public issue). In addition, several cases have held that the anti-SLAPP statute applies to private communications concerning public issues. E.g., Averill v. Superior Court (1996) 42 Cal.App.4th 1170, 1175; Ruiz v. Harbor View Community Assn. (2005) 134 Cal.App.4th 1456, 1470; Integrated Health Care Holdings v. Fitzgibbons (2006) 140 Cal.App.4th 515, 525, fn. 4.

Page   5 of 10   DEPT. WEC

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/15/07 | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN JUDGE | K. SANDOVAL DEPUTY CLERK |
| | R. WHITE, CSL/CT. ASST. |
| HONORABLE JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #5 | |
| NONE Deputy Sheriff | NONE Reporter |

| | | | |
|---|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | | |
| | ONE AMERICA PRODUCTIONS,INC. ET | Defendant Counsel | |
| | AL. | | |

NATURE OF PROCEEDINGS:

In addition to the foregoing, the Court
concludes that application of CCP 425.16 to the
unusual fact pattern before the Court would further
that statute's purpose of encouraging participation
in matters of public significance.

Insofar as Defendants have satisfied their
initial burden under CCP 425.16, the burden now
shifts to Plaintiffs to establish a probability that
they will prevail at trial by making a prima facie
showing as to each cause of action. The Court
concludes that Plaintiffs have failed to satisfy
this burden as to any cause of action.

Plaintiffs' opposition brief fails to address
several of the arguments raised by Defendants with
regard to the fraud claim, such as the lack of
actual, definite damages. Plaintiffs' evidence in
this regard is virtually non-existent.

Plaintiffs have failed to show a basis for the
equitable remedy of rescission. The Court could not
possibly return Plaintiffs to anything remotely
close to the status quo ante. Indeed, the
rescission claim is, in effect, seeking a backdoor
permanent injunction against displaying Plaintiffs'
images, etc. on DVD, without satisfying the
stringent requirements for that type of injunction.

Plaintiffs' opposition brief does not in any

Page    6 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | DEPT. WEC |
|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL          DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. |
| HONORABLE #5 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE          Reporter |

| 2:30 pm | SC091723 | Plaintiff Counsel | |
|---|---|---|---|
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | | |

NATURE OF PROCEEDINGS:

manner respond to Defendants' argument that they did
not portray Plaintiffs in a false light.  Motion,
15:8-19.

With regard to Plaintiffs' mis-titled claim for
"statutory false light" (which is actually a claim
based on the statutory right of publicity) and
Plaintiffs' claim for common law misappropriation of
likeness, Defendants simply have the more persuasive
arguments, particularly with regard to those based
on the First Amendment.  Indeed, the Court cannot
stress too highly the importance of the free speech
rights at stake in this case.  Movies are of
significant public interest.  "It cannot be doubted
that motion pictures are a significant medium for
the communication of ideas. They may affect public
attitudes and behavior in a variety of ways, ranging
from direct espousal of a political or social
doctrine to the subtle shaping of thought which
characterizes all artistic expression.  The
importance of motion pictures as an organ of public
opinion is not lessened by the fact that they are
designed to entertain as well as to inform." Joseph
Burstyn, Inc. v. Wilson (1952) 343 U.S. 495, 501, 72
S.Ct. 777, 96 L.Ed. 1098 (fn. omitted).  The fact
that movies are made for private profit does not
diminish the fact movies are "a form of expression
whose liberty is safeguarded by the First
Amendment."  Id. at 501-502, 72 S.Ct. 777 (fn.
omitted).  See also, Guglielmi v. Spelling-Goldberg

Page    7 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK | |
| | R. WHITE, CSL/CT. ASST. | |
| HONORABLE #5    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel |
| | JOHN DOE I ET. AL. | NO APPEARANCES |
| | VS | Defendant Counsel |
| | ONE AMERICA PRODUCTIONS,INC. ET AL. | |

**NATURE OF PROCEEDINGS:**

Productions (1979) 25 Cal.3d 860.  This movie in particular, which is part fiction and part documentary, utilizes the reactions and statements of people such as Plaintiffs to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.

Plaintiffs' claim for "negligent infliction of emotional distress," which is really a claim for negligence, fails.  Plaintiffs have failed to identify the duty which they contend Defendants owed them, and the manner in which Defendants breached said duty.  Further, insofar as the movie is partly a work of fiction, the cause of action is arguably barred by Polydoros v. Twentieth Century Fox Film Corp. (1997) 67 Cal.App.4th 318, 326 ("Respondents are 'immune' from liability because they have a constitutional right to free expression, which they exercised when they made and released this film")

Motion is granted in full.  Defendants are to serve and lodge a proposed order pursuant to CRC 3.1312.  They are to concurrently serve and lodge a proposed revised judgment of dismissal as to the complaint in its entirety.

Any request for attorney's fees pursuant to CCP 425.16(c) may be made by separate motion supported by admissible evidence showing in detail the amount of reasonable time spent on the motion to strike and

Page    8 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07                                                      DEPT. WEC

HONORABLE JOSEPH S. BIDERMAN          JUDGE  K. SANDOVAL          DEPUTY CLERK
                                             R. WHITE, CSL/CT. ASST.
HONORABLE                    JUDGE PRO TEM                   ELECTRONIC RECORDING MONITOR
#5
          NONE                Deputy Sheriff  NONE              Reporter

2:30 pm | SC091723                        Plaintiff
                                          Counsel
          JOHN DOE I ET. AL.                        NO APPEARANCES
          VS                              Defendant
          ONE AMERICA PRODUCTIONS, INC. ET  Counsel
           AL.

---

NATURE OF PROCEEDINGS:

the fees motion.

Clerk to give notice.  Counsel for plaintiff to
promptly notice remaining parties.

          CLERK'S CERTIFICATE OF MAILING/
             NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
2-15-07 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: February 15, 2007

John A. Clarke, Executive Officer/Clerk

By: _____
          K. Sandoval


OLIVIER A. TAILLIEU, ESQ.      WALT SADLER, ESQ.
9595 WILSHIRE BOULEVARD        LEOPOLD, PETRICH & SMITH

              Page   9 of 10   DEPT. WEC     MINUTES ENTERED
                                             02/15/07
                                             COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN   JUDGE | K. SANDOVAL   DEPUTY CLERK | |
| | R. WHITE, CSL/CT. ASST. | |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #5 | | |
| NONE   Deputy Sheriff | NONE   Reporter | |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel |
| | JOHN DOE I ET. AL. | NO APPEARANCES |
| | VS | Defendant Counsel |
| | ONE AMERICA PRODUCTIONS,INC. ET AL. | |

NATURE OF PROCEEDINGS:

9TH FLOOR                    SUITE 3110
BEVERLY HILLS, CA   90212    2049 CENTURY PARK EAST
                             LOS ANGELES, CA   90067

Page   10 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK