Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
*Attorneys for Defendants Twentieth Century*
*Fox Film Corporation, One America*
*Productions, Inc., Todd Lewis Schulman,*
*Monica Levinson, Julie Lynn Chouinard, Sacha*
*Baron Cohen, Everyman Pictures,*
*and Dune Entertainment LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

| | |
|---|---|
| Cindy Streit; Sarah Moseley; Ben K. McKinnon; Michael M. Jared; and Lynn S. Jared, :<br>:<br>: Plaintiffs, :<br>:<br>v. :<br>:<br>Twentieth Century Fox Film Corporation; One America Productions, Inc.; Springland Films; Todd Lewis Schulman; Monica Levenson; Julie Lynn Chounard; Sacha Baron Cohen; Everyman Pictures; Gold/Miller; Productions; Major Studio Partners, Inc.; Dune Entertainment, LLC; Four by Two Production Company; Peter Baynham; Jan Mazer; and Anthony Hines, :<br>:<br>Defendants. :<br>: | Case No.: 08 CIV 01571 (LAP) |

-----------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………ii

ARGUMENT…………………………………………………………………...1

THE CONSENT AGREEMENTS BAR PLAINTIFFS'
COMPLAINT IN ITS ENTIRETY…………………………………………….1

    A.    The Consent Agreements Bar Plaintiffs' Fraudulent
          Inducement Claims ........................................................................1

          1.    Plaintiffs Waived Their Right To Rely On Any
                Representations About The Film ..........................................2

          2.    The Consent Agreements Are Not Misleading......................4

    B.    Streit's Claims Are Also Barred By The Release of Liability..........8

    C.    This Court Should Dismiss Plaintiffs' Unjust Enrichment
          Claims ...........................................................................................8

CONCLUSION………………………………………………………………..10

## TABLE OF AUTHORITIES

                                                              **Page**

**Federal Cases**

*Fonseca v. Columbia Gas Sys., Inc.*,
   37 F. Supp. 2d 214 (W.D.N.Y. 1998) ................................................................................ 3

*Johnston v. One America Prods., Inc.*,
   No. 2:07CV042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007) ..................................... 6

*Koock v. Charter Grp., Inc.*,
   No. 89 CIV. 2549 (RWS), 1989 WL 126064 (S.D.N.Y. Oct. 13, 1989) .............................. 4

*Levin v. McPhee*,
   917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*,
   119 F.3d 189 (2d Cir. 1997) ................................................................................................ 9

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
   906 F.2d 884 (2d Cir. 1990) ................................................................................................. 8

*Natwest USA Credit Corp. v. Alco Standard Corp.*,
   858 F. Supp. 401 (S.D.N.Y. 1994) ...................................................................................... 9

*NCA Holding Corp. v. Ernestus*,
   No. 97 CIV. 1372(LMM) 1998 WL 229510 (S.D.N.Y. May 7, 1998) ............................ 3, 4

*Scala v. Sequor Group, Inc.*,
   No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) ........................ 2, 3, 5

*Zoll v. Ruder Finn, Inc.*,
   No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH),
   2004 WL 42260 (S.D.N.Y. Jan. 7, 2004) .......................................................................... 10

**State Cases**

*Danann Realty Corp. v. Harris,*
   5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959) ............................................................................ 2

*Doe v. One America Prods., Inc.*,
   SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007)……………………………………….6

*Morby v. Di Siena Assocs. LPA*,
   291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002) .......................................................... 4

\\\NY - 027721/000009 - 1089364 v1

*Saunder v. Baryshnikov*,
   110 A.D.2d 511, 487 N.Y.S.2d 51 (1st Dep't 1985) ................................................................ 9

*Smalley v. Dreyfus Corp.*,
   10 N.Y.3d 55, 853 N.Y.S.2d 270 (2008) ................................................................................. 3

*Touloumis v. Chalem*,
   156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989) .......................................................... 3, 4

**Federal Rules**

Federal Rules of Civil Procedure Rule 12(b)(6)……………………………….......................1

Federal Rules of Civil Procedure Rule 9(b)............................................................................. 3, 4

**State Statutes**

New York Civil Rights Law § 51……………………………………….............................10

Defendants, by their undersigned attorneys, respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

In Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (the "Opposition"), Plaintiffs essentially argue that they are not bound by the Consent Agreements they concededly and voluntarily signed because they were surprised the Film was not an educational documentary for Belarus Television and that it contained offensive material and was rated R. Plaintiffs' arguments, however, are wholly meritless. All of Plaintiffs' assumptions about the Film are contradicted by the face of the Consent Agreements, which explicitly state that Defendants had the right to use Plaintiffs' appearances in any medium throughout the universe and that the Film is a "documentary-style" motion picture which may contain offensive content. Further, Plaintiff Streit signed a separate comprehensive Release *after* the alleged fraudulent behavior. As such, Plaintiffs' Complaint is barred.

## ARGUMENT
## THE CONSENT AGREEMENTS BAR PLAINTIFFS' COMPLAINT IN ITS ENTIRETY

### A. The Consent Agreements Bar Plaintiffs' Fraudulent Inducement Claims

There is no dispute that Plaintiffs voluntarily signed the Consent Agreements, which unambiguously state that they waived all of the claims they assert here. Consent Agreements ¶ 4.

---

[1] The facts necessary for the determination of this motion are set forth in the Hansen Decl. and the Metcalf Decl., and the exhibits annexed thereto, submitted with Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint (the "Opening Memorandum") and the reply declaration of Joan Hansen ("Reply Decl."), sworn to on the 1st day of July 2008, and the exhibit annexed thereto, submitted herewith. All defined terms in this memorandum of law have the meanings given to them in the Opening Memorandum. The defined term "Defendants" now includes Sacha Baron Cohen, who, by order of this Court dated May 30, 2008, joined in the Defendants' Motion to Dismiss the First Amended Complaint.

It is also undisputed that they were each paid $100 "to appear in a motion picture," as the Consent Agreements recite. *Id.* at 1. Plaintiffs now seek to avoid the consequences of the Consent Agreements arguing first, that they are not bound by the Consent Agreements because they were fraudulently induced to sign them and second that even if they were not fraudulently induced to sign the Consent Agreements, the Agreements themselves are misleading because the Film is not truly a "documentary-*style*" motion picture. But neither theory saves Plaintiffs' claims. The Consent Agreements are valid and bar Plaintiffs' Complaint in its entirety.

1. **Plaintiffs Waived Their Right To Rely On Any Representations About The Film**

As set forth more fully in the Opening Memorandum, Plaintiffs' fraudulent inducement claim, along with each of the other claims set forth in their Complaint (all of which are covered by the Consent Agreements), should be dismissed because the law is clear that when a plaintiff signs a release which disclaims reliance upon specific representations the plaintiff "is barred from pursuing his claim that he was defrauded in signing his contracts." *Scala v. Sequor Group, Inc.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *6 (S.D.N.Y. Apr. 14, 1995) (Preska, J.). *See also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21, 184 N.Y.S.2d 599, 599 (1959) (a disclaimer that states plaintiff is "not relying on any representations as to the very matter as to which it now claims it was defrauded … *destroys* the allegations in the complaint that the agreement was executed in reliance upon these contrary oral representations") (emphasis added).

Here, Plaintiffs expressly agreed that they were "not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film." Consent Agreements ¶ 5.[2] Accordingly, regardless of what

---

[2] Plaintiffs also specifically released any fraud claims based on "any alleged deception or surprise about the Film" and any claims based on "any allegedly false or misleading portrayal" of the Plaintiffs. Consent Agreements ¶ 4(g), (p).

2

Plaintiffs now claim they were told by the Defendants, they are plainly and simply barred from pursuing their fraudulent inducement claims based on any such representations.

Rather than even address this clear precedent – and it is telling that Plaintiffs utterly fail to do so – Plaintiffs claim that their mere allegations of fraud are sufficient to defeat this motion to dismiss. Opp. at 1-2, 4-5. That position is simply wrong. The cases Plaintiffs cite for this proposition, which contain only a passing discussion of fraud claims, do not address a release that specifically disclaims reliance on representations regarding the very matter now alleged to have been misrepresented. Indeed, in researching and preparing this memorandum, the undersigned have not been able to find even a single case which holds that mere allegations of fraud are sufficient to survive a motion to dismiss where there is a disclaimer clause like the one at issue here. Moreover, many courts, including this one, *do* grant motions to dismiss fraudulent inducement claims. *See, e.g., Scala*, 1995 WL 225625, at *6 (dismissing fraudulent inducement claim on a motion to dismiss); *Fonseca v. Columbia Gas Sys., Inc.,* 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998) (same). Indeed, just this year, the New York Court of Appeals dismissed a claim for fraudulent inducement on a motion to dismiss because the plaintiff could not establish reasonable reliance as a matter of law. *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 853 N.Y.S.2d 270 (2008). If mere allegations of fraud could defeat a motion to dismiss, even in the face of a release with a specific disclaimer clause, it would contradict New York's long-held position that releases are presumptively valid. *See Touloumis v. Chalem*, 156 A.D.2d 230, 231, 548 N.Y.S.2d 493, 494 (1st Dep't 1989).[3] As such, Plaintiffs' mere allegations of fraud are insufficient to stave

---

[3] Plaintiffs also fail to address Defendants' argument that they have not met the heightened pleading standard required for fraud claims under Fed. R. Civ. P. 9(b). Instead, they argue that they need not allege fraud with particularity because Defendants *conspired* to defraud Plaintiffs. Opp. at 5 n.1. But, in the Second Circuit "the word conspiracy does not alone satisfy the specificity requirement of Rule 9(b)." *NCA Holding Corp. v. Ernestus,* No. 97

3

off dismissal.

### 2. The Consent Agreements Are Not Misleading

Faced with the weakness of their arguments, Plaintiffs argue that, even if they cannot rely on alleged oral misrepresentations to invalid the Consent Agreements, they are still not bound by the Consent Agreements because the Agreements falsely describe the Film and are, therefore, misleading on their face.[4] Opp. at 7-10. This alternative theory is also without merit.

First, because Plaintiffs go out of their way to confuse the issue, it is important to emphasize the plain wording of the Consent Agreements. The Consent Agreements state that "in exchange" for $100, Plaintiffs have "the opportunity … to appear in a motion picture." Consent Agreements at 1. And, Plaintiffs agreed to be filmed for a "documentary-style film" that is aimed at "a young adult audience by using entertaining content and formats." *Id.* ¶ 1. The Consent Agreements also explain that Defendants had the right to use Plaintiffs' images "without restriction in any media throughout the universe in perpetuity and without liability ….." *Id.* ¶¶ 1, 2. Plaintiffs also agreed to waive their right to bring "*any claims*" against Defendants including claims for "infringement of rights of publicity or misappropriation (such as any alleged improper

---

CIV. 1372(LMM) 1998 WL 229510, at *3 (S.D.N.Y. May 7, 1998) (citation omitted). Instead, "Fed.R.Civ.P. 9(b) requires specific pleading, for each defendant, as to the circumstances surrounding the fraudulent conduct with which each individual stands charged" and "conclusory allegations of conspiracy" are insufficient. *Koock v. Charter Grp., Inc.*, No. 89 CIV. 2549 (RWS), 1989 WL 126064, at *3 (S.D.N.Y. Oct. 13, 1989).

[4] Plaintiffs argue in the Opposition that Defendants "do not dispute" that they made misrepresentations with the intent to deceive Plaintiffs. Opp. at 7, n.3. Of course, this is untrue. Defendants *do* dispute that they made any misrepresentations to the Plaintiffs. But, even accepting Plaintiffs' allegations as true, as this Court must on this 12(b)(6) motion, the Consent Agreements bar the Complaint in its entirety. *See, e.g., Morby v. Di Siena Assocs. LPA,* 291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002). Further, Defendants' reliance on the "execution" of the Consent Agreements to bar the Complaint is not simply a "technicality," as Plaintiffs argue. Opp. at 7 n.3. To the contrary, New York courts consider releases to be a serious and necessary part of our judicial system and they are presumptively enforced. *See Touloumis*, 156 A.D.2d at 231, 548 N.Y.S.2d at 494.

4

of unauthorized use of [Plaintiffs'] name or likeness or image)", deceptive trade practices, intentional infliction of emotional distress and fraud. *Id.* at 1, ¶ 4(c), (h), (k), (p) (emphasis added). And, as discussed above, Plaintiffs disclaimed reliance on any representations (which would include oral representations) about the nature of the Film or the identity of persons associated with the Film. *Id.* ¶ 5. Accordingly, on their face, the Consent Agreements accurately describe both Plaintiffs' participation in the Film and the scope of their waiver or rights.[5]

Faced with this unequivocal language, Plaintiffs focus on three words in the Consent Agreements –"documentary-style film" – to argue that the Consent Agreements are misleading and invalid. But this argument is a red herring. The definition of the Film as a documentary-style film is wholly irrelevant to the release language at issue here. In paragraph 4 of the Consent Agreements, Plaintiffs voluntarily waive their right to bring specific claims against Springland and its related entities. Consent Agreements ¶ 4. This waiver is not limited to Plaintiffs' appearances in the "Film" as defined in the Consent Agreements. Accordingly, even if the description of the "Film" as a documentary-style film were inaccurate (which it is not), the

---

[5] Plaintiffs' argument that Defendants had a duty to explain the Film in detail also fails. Opp. at 4, 13, 15. As this Court has recognized, a duty to speak cannot arise simply because two parties entered into a release and the "partial or ambiguous statement" and "superior knowledge" exceptions to this rule do not apply in the "face of the unambiguous language in the documents" or where the allegedly withheld information is clear from the release. *Scala*, 1995 WL 225625, at *8 n.14. Here, as discussed above, the Consent Agreements truthfully describe the Film and the nature of the claims released. Plaintiffs claim, for example, that they were misled because the Film is offensive, but the Consent Agreements expressly state that the Film may contain offensive content. Consent Agreements ¶ 4(f). Plaintiffs complain that they were misled because the Film is R rated, but the Consent Agreements expressly state that the Film is intended for a "young adult audience." *Id.* ¶ 1. And Plaintiffs complain that the Film was not shown on Belarus Television, but the Consent Agreements grant Defendants the right to use Plaintiffs' images "without restriction in any media throughout the universe." *Id.* ¶ 2. As such, in addition to Plaintiffs' waiving any claims based on representations concerning the nature of the Film, each and every alleged misrepresentation is directly contradicted by the face of the Consent Agreements. Thus, Defendants did not owe Plaintiffs a duty to explain the "true intent of the Film."

5

waivers would be enforceable.

Moreover, even if the description of the Film were relevant, the description, including the use of the adjective "documentary-style," is accurate. The Consent Agreements clearly state that the Film is a "motion picture" in a "documentary-*style*" that will be aimed at a "young adult audience by *using entertaining content and formats*" and that may involve some "*offensive behavior* or questioning." Consent Agreements at 1, ¶¶ 1, 4 (emphasis added). This is undoubtedly an accurate description of the Film. Indeed, as discussed in the Opening Memorandum, two other courts have already determined that the Film is a "part documentary" or a "mixture of documentary and fiction." *See Doe v. One America Prods., Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) (the Film is a "part documentary" which "utilizes the reactions and statements of people … to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.") (A true and correct copy of this decision is annexed as Exhibit A to the Opening Memorandum); *Johnston v. One America Prods., Inc.*, No. 2:07CV042-P-B, 2007 WL 2903218, at *5 (N.D. Miss. Oct. 2, 2007) (the Film "is not simply an ordinary, expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres ….").[6] In the Opposition, Plaintiffs appear to argue that a British film guide's description of the Film as a "spoof" proves that the Film is not in a documentary-style. Opp. at 10 n.5. While Defendants do not believe that this is relevant to this Court's determination here, the description of the Film is a "spoof" as not inconsistent with it being in a documentary-style. (A Google search of "spoof,"

---

[6] The Film has been described in the media as a documentary-style film both by film critics and industry professionals. *See* http://blog.digitalcontentproducer.com/briefingroom 2006/12/20/borat-lensed-with-panasonic-aj-hdc27-varicams/ (last visited June 17, 2008) (Film "shot in classic documentary style"); David Germain, *Cultural Learnings: "Borat" v. "Literary Classics,"* THE ASSOCIATED PRESS, Mar. 8, 2007 (Film is an "uproarious assemblage of sketches, documentary-style encounters and moments of cultural ridicule").

6

"documentary-style" and "movie" yields 11,900 hits – one of the first being about the Film, and a Google search using "documentary style spoof" as an exact phrase yields over 100 hits).

Plaintiffs strain to argue that the Consent Agreements are misleading because the Film is not a "documentary" as understood "in modern cinema" insofar as a documentary is non-fiction film.  Opp. at 8-9.  But the Consent Agreements *do not* state that the Film is a "documentary." They state that it is a "documentary-style" motion picture.  Consent Agreements at 1, ¶ 1.  And, as discussed above, that description is accurate.[7]  Plaintiffs also allege that the Consent Agreements are misleading because Schulman told Plaintiffs his name was "Todd Lewis" and the Consent Agreements were entered into by Springland – not One America.  Opp. at 11, 15-16.  But this argument is incorrect.  First, they are not misrepresentations.  Schulman's full name is *Todd Lewis* Schulman and Schulman properly identified himself as a representative of Springland.  And, Springland is a registered d/b/a of One America – the producer of the Film.  Reply Decl., Ex. A. Second, the fact that Schulman's last name was Schulman, not Lewis, or that the corporate name of the production company for the Film was One America, not Springland, cannot possibly be considered material as it cannot possibly have affected Plaintiffs' decision to appear in the Film. Further, as previously noted, Plaintiffs waived all claims based on representations concerning the identity of persons associated with the Film.

Finally, in a desperate effort to save their claim, Plaintiffs argue that if the Consent Agreements are not misleading, they are, at least, ambiguous.  But this argument is wrong as a matter of law.  Plaintiffs' own narrow interpretation of the term "documentary-style film" to cover

---

[7] In the Opposition, Plaintiffs list a number of "bona fide documentaries."  Opp. at 10.  In the same vein, Defendants draw this Court's attention to a few examples of famous fictional documentary-style films: *This is Spinal Tap* (1984), *Best in Show* (2000), *The Blair Witch Project* (1999), *Bob Roberts* (1992), *Zelig* (1983), *Schindler's List* (1993) and the documentary-style fictional television show *The Office* (NBC).

7

only pure documentaries cannot make the Consent Agreements ambiguous. As the Second Circuit has held, "Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation. The court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (internal citations and quotations omitted). Here, quite simply, the Consent Agreements do not state the Film is a "documentary," and Plaintiffs' attempt to argue that they should be read as such is unreasonable.

B. **Streit's Claims Are Also Barred By The Release of Liability**

In addition, all of Streit's claims are also barred by the Release of Liability that she voluntarily signed nearly one month after the Scene was filmed and at a time when she was fully aware of the nature of the Film. Streit attempts to avoid the general Release of Liability she entered into by arguing that it does not apply to claims relating to the Film because it only releases claims related to Streit's services as an etiquette coach. Opp. at 16-17. This is absurd. In signing the Release of Liability, Streit waived *all* claims related to *all* services at *all* times, before, after, and during the dinner party. It is not limited in any way to any particular service. And Streit admits as much in her Declaration and Complaint, in which she describes her preparation for and the filming of the Scene as her "services" for the "dinner party." Opp. at Ex. B ¶ 4, 7, 16, 17; Complaint ¶¶ 27, 31, 34-39. Streit signed the Release of Liability nearly a month after the dinner party and she received an additional $2,950.00 from the Defendants in consideration for it. The Release of Liability bars Streit from asserting any of her claims here.

C. **This Court Should Dismiss Plaintiffs' Unjust Enrichment Claims**

Next, Plaintiffs' unjust enrichment claims fail as a matter of law.[8] First, Plaintiffs cannot

---

[8] Plaintiffs' intentional infliction of emotional distress claims should also be dismissed. Not

8

and do not dispute that their unjust enrichment claims are barred by the Consent Agreements if the Consent Agreements are valid. Because they are valid, the Court need go no further and can dismiss the claim based on the Consent Agreements. But Plaintiffs' unjust enrichment claims would also be dismissible as a matter of law even if they had not signed the Consent Agreements.

To save their claims, Plaintiffs appear to argue that although they were each paid $100 to appear in the Film, they now believe that was not enough. The Film, they argue, was profitable and they are embarrassed by their participation in it, so Defendants should pay them some of its profits. Opp. at 18-19. But this assertion is nothing more than a transparent attempt to renegotiate their contracts. Plaintiffs' request for more money cannot provide a basis for an unjust enrichment claim. *See Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 413 (S.D.N.Y. 1994) (Preska, J.) ("A court should not rewrite a contract or create new terms or change the terms made by the parties"); *Saunder v. Baryshnikov*, 110 A.D.2d 511, 511, 487 N.Y.S.2d 51, 52 (1st Dep't 1985) (plaintiff's unjust enrichment claim fails because she was paid for her services). Plaintiffs contracted to appear in a motion picture in exchange for $100 each and they were paid that amount. Consent Agreements at 1. This alone necessitates dismissal of their claims. Similarly it is of no moment that other people in the Film "were given an opportunity to review and agree to the movie script and negotiate compensation." Opp. at 17. What other

---

only are they expressly waived in the Consent Agreements, but also Plaintiffs essentially concede that Defendants' conduct was not the "day in day out harassment" necessary for this claim. Instead, they argue that they feel consistently humiliated because the Film is "regularly on TV." Opp. at 20. The fact that the Film can be seen on television is not the kind of consistent, harassing and abusive conduct that gives rise to an intentional infliction of emotional distress claim. Indeed, if this conduct could support an intentional infliction claim, then a cause of action would arise any time an allegedly offensive article or book was published. Such an unreasonable interpretation of the intentional infliction of emotional distress tort is contrary to New York law. *Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997) (publication of an allegedly defamatory article does not constitute extreme and outrageous conduct as a matter of law).

9

people were paid or not paid, or knew or did not know about the Film is irrelevant to the fact that Plaintiffs knowingly signed the Consent Agreements and were each paid $100.

Moreover, as stated in the Opening Memorandum, even if Plaintiffs' theories had any merit, which they clearly do not, their unjust enrichment claims are preempted by Section 51. Plaintiffs argue that their claims are not preempted because their claims "are not based on the unauthorized use of their images." Opp. at 19 (emphasis in original). In the next sentence, however, Plaintiffs argue that their claims are based on their allegations that "they were fraudulently induced into consenting to use their *image* in a major motion picture …." *Id.* (emphasis added). Clearly, even Plaintiffs concede this case is about the use of their images in the Film. As explained in the Opening memorandum, "there is no cause of action in New York for unjust enrichment arising from the alleged unauthorized use of personal image." *Zoll v. Ruder Finn, Inc.,* No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004). As such, Plaintiffs' unjust enrichment claims are preempted by Section 51.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: July 7, 2008                    Respectfully submitted,

                                              HOGAN & HARTSON LLP

                                              By: _____/s/_____
                                              Slade R. Metcalf (SM 8360)
                                              Katherine M. Bolger (KB 6206)
                                              Rachel F. Strom (RS 9666)
                                              HOGAN & HARTSON LLP
                                              875 Third Avenue
                                              New York, NY 10022
                                              Tel: (212) 918-3000
                                              *Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Cindy Streit; Sarah Moseley; Ben K. :
McKinnon; Michael M. Jared; and Lynn :
S. Jared, : Case No.: 08 CIV 01571 (LAP)
 :
    Plaintiffs, :
 :
v. :
 : **CERTIFICATE OF SERVICE**
Twentieth Century Fox Film :
Corporation; One America Productions, :
Inc.; Springland Films; Todd Lewis :
Schulman; Monica Levenson; Julie Lynn :
Chounard; Sacha Baron Cohen; :
Everyman Pictures; Gold/Miller; :
Productions; Major Studio Partners, Inc.; :
Dune Entertainment, LLC; Four by :
Two Production Company; Peter :
Baynham; Jan Mazer; and Anthony :
Hines, :
 :
    Defendants. :
 :
------------------------------------------------------------------------X

    I, Rachel F. Strom, hereby certify that on July 7, 2008, I caused a true and correct copy of the Defendants' Reply Memorandum Of Law In Further Support Of Their Motion To Dismiss The First Amended Complaint and the Reply Declaration Of Joan Hansen In Further Support Of Defendants' Motion To Dismiss The First Amended Complaint and the exhibit annexed thereto, to be served through the Court's electronic notification system and by Federal Express overnight delivery upon:

    Adam Richards
    ADAM RICHARDS LLC
    40 Fulton Street, 7th Floor
    New York, NY 10038
    Tel: (212) 233-4400
    *Attorney for Plaintiffs Cindy Streit,*
    *Sarah Moseley, Ben K. McKinnon,*
    *Michael M. Jared and Lynn S. Jared*

Dated: July 7, 2008                               s/ Rachel F. Strom
                                                                       RACHEL F. STROM (RS 9666)